279 N.J. Super. 276 (1995)
652 A.2d 758
EDWARD NOWACKI, AS EXECUTOR OF THE ESTATE OF MARY NOWACKI, PLAINTIFF-RESPONDENT,
v.
COMMUNITY MEDICAL CENTER, ANGELA PELLEGRINA, MARILYN CLAYTON AND PATRICIA MEYERS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 12, 1994.
Decided February 7, 1995.
*279 Before Judges MICHELS, STERN and HUMPHREYS.
Barbara Ann Jacob argued the cause for appellants (Grossman & Kruttschnitt, attorneys; Eli L. Eytan on the brief).
Kevin Kovacs argued the cause for respondent (Lowenstein, Sandler, Kohl, Fisher & Boylan, attorneys; Mr. Kovacs on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Defendants Community Medical Center, Angela Pellegrina, Marilyn Clayton and Patricia Meyers appeal from a judgment in favor of plaintiff Edward Nowacki as executor of the estate of Mary Nowacki,[1] awarding damages in the amount of $297,500. The jury found that Pellegrina was 15% liable; Clayton 10% liable; Meyers 20% liable and the Center 55% liable. The Center's *280 liability was limited to $10,000 pursuant to N.J.S.A. 2A:53A-8 as it provided when the cause of action accrued, and a molded judgment in the amount of $188,563.12, including prejudgment interest, was entered.
Defendants seek a reversal and entry of judgment in their favor. Alternatively, they seek a new trial or remittitur of damages. Defendants contend, generally, that the trial court abused its discretion in redacting portions of hospital records relating to plaintiff and in excluding expert testimony concerning those records; in barring them from calling the treating physicians and the physicians who prepared the redacted portions of the hospital records; and in preventing them from cross-examining plaintiff's expert with regard to medical records which he reviewed in preparation for his report. Defendants also assert that the verdict should be reversed because there was no testimony by which the jury could determine the applicable standard of care; the trial court denied them a fair trial; the verdict was excessive and against the weight of the evidence; and the cumulative impact of errors denied them a fair trial.
Plaintiff commenced this case seeking damages for injuries sustained as a result of a fall she suffered while undergoing radiation treatment at the Center. She fell while attempting to lift herself onto the treatment table. She claims that she sustained broken bones in her left arm (humerus) and right leg (femur) as a result of the fall. The essence of the dispute centers around plaintiff's claim of negligence, and defendants' assertion that plaintiff suffered pathological fractures independent of the fall. A pathological fracture may result from metastasis to the bone. Movement of the weakened bone can cause such a fracture even in the absence of trauma.
Plaintiff underwent a radical mastectomy in 1987. She received radiotherapy and chemotherapy treatment thereafter and developed a progressive and diffuse metastatic condition. She entered *281 the hospital on October 17, 1989, and commenced radiation treatment on October 23, 1989. In plaintiff's depositions admitted into evidence at trial, she testified that there were no handles on the radiation table or stool used on October 24, 1989, and that she fell while trying to lift herself onto the table. Radiation therapists were standing near her at the time, and there was some question as to whether Pellegrina had her hand on plaintiff's back. The therapists apparently observed plaintiff experience no difficulty before the fall. As a result of the fractures, plaintiff's radiation therapy was terminated because it would prevent healing of the fractures. An open reduction could not be conducted because of plaintiff's heart condition, but a pin was placed in her right leg by Dr. Ralph Kuhn, an orthopedist. She was placed in casts and traction before discharge on February 9, 1990. She died on April 26, 1990.
On the first day of trial plaintiff successfully moved to exclude from evidence proofs relating to a later pathological fracture sustained by plaintiff on January 9, 1990. As a result it was stipulated that damages would be limited to the period before that fracture. The jury was instructed that because of plaintiff's "other problems" as described in the hospital records, "the only damages for which she can collect ... are those damages resulting from the fractures from October 24th, 89 to January 10th, 90."

I.
The trial judge redacted from hospital records admitted into evidence all references to the diagnosis of pathological fracture and the cause of the fractures. She also precluded the defense expert (who did not prepare the reports) from testifying regarding these portions of the records. Defendants insist that statements included within hospital records were admissible at the time of trial, and that our amended Rules of Evidence support that *282 conclusion.[2]See Evid.R. 63(13); N.J.R.E. 803(c)(6) which is expressly made "subject to Rule 808."
N.J.R.E. 808 provides:
RULE 808. EXPERT OPINION INCLUDED IN A HEARSAY STATEMENT ADMISSIBLE UNDER AN EXCEPTION
Expert opinion which is included in an admissible hearsay statement shall be excluded if the declarant has not been produced as a witness unless the trial judge finds that the circumstances involved in rendering the opinion, including the motive, duty, and interest of the declarant, whether litigation was contemplated by the declarant, the complexity of the subject matter, and the likelihood of accuracy of the opinion, tend to establish its trustworthiness.
N.J.R.E. 808 was not in effect at the time of trial, but there is little doubt that its principle was an established part of our jurisprudence at that time. See State v. Matulewicz, 101 N.J. 27, 30, 499 A.2d 1363 (1985); Biunno, Current N.J. Rules of Evidence, quoting 1991 Supreme Court Committee Comment on N.J.R.E. 808. While "routine" findings of medical experts contained in medical records were admissible as business records under Evid.R. 63(13), such findings were to be excluded if they were "diagnoses of complex medical conditions." Matulewicz, supra, 101 N.J. at 32 n. 1, 499 A.2d 1363 (citation omitted), citing Lazorick v. Brown, 195 N.J. Super. 444, 451, 480 A.2d 223 (App. Div. 1984) and Gunter v. Fischer Scientific American, 193 N.J. Super. 688, 694, 475 A.2d 671 (App.Div. 1984). See also Theer v. Philip Carey Co., 133 N.J. 610, 628-30, 628 A.2d 724 (1993); Clowes v. Terminix Intern., Inc., 109 N.J. 575, 598, 538 A.2d 794 (1988); State v. Martorelli, 136 N.J. Super. 449, 454, 346 A.2d 618 (App.Div. 1975), certif. denied, 69 N.J. 445, 354 A.2d 642 (1976). Thus, at the time of trial, as now, it was clearly established that medical opinions in hospital records should not be admitted under the business records exception where the opponent will be deprived of an opportunity to cross-examine the declarant on a *283 critical issue such as the basis for the diagnosis or cause of the condition in question.
While there are cases supporting the admission of physical findings pursuant to the business records exception to the hearsay rule, see State v. Gardner, 51 N.J. 444, 461-62, 242 A.2d 1 (1968); Falcone v. New Jersey Bell Telephone Company, 98 N.J. Super. 138, 148, 236 A.2d 394 (App.Div. 1967), certif. denied, 51 N.J. 190, 238 A.2d 475 (1968); Webber v. McCormick, 63 N.J. Super. 409, 416, 164 A.2d 813 (App.Div. 1960), the Court in Matulewicz made clear that it is "the degree of complexity of the procedures utilized in formulating the conclusions expressed in the [expert's] report" which determines whether it is too complex to be admitted under the business records exception. Matulewicz, supra, 101 N.J. at 30, 499 A.2d 1363. See also Biunno, Current N.J. Rules of Evidence, quoting 1991 Supreme Court Committee Comments on N.J.R.E. 803(c)(6), 808.
Plaintiff's expert, Dr. Floyd Krengel, an orthopedist, viewed the depositions, hospital records, reports and x-rays, and concluded that the fall caused the fractures. He testified that, in his opinion, "[i]n attempting to climb to the treatment table, [plaintiff] fell backwards" which "caus[ed] ... the bones to break" and that "the fractures resulted from the trauma of the fall." He further testified that "X-ray studies were done which revealed the fractures." Without reference to specifics, defendants were permitted to develop on cross-examination that Dr. Krengel disagreed with the diagnosis and "description as to the cause of the fracture" as provided in the radiologists' reports and the discharge summary. At the conclusion of his testimony, the doctor also testified that the opinions he expressed "involve difficult matters of interpretation" and that his testimony related to the "diagnosis of complex medical conditions."[3]
*284 Thus, the trial judge did not abuse her discretion by excluding portions of the hospital records in which non-testifying physicians concluded that the fractures suffered by plaintiff from her fall were "pathologic" or "non-traumatic." The records involved a complex diagnosis involving the critical issue in dispute, as opposed to an uncontested diagnosis or insignificant issue. This is not a case like Blanks v. Murphy, 268 N.J. Super. 152, 164, 632 A.2d 1264 (App.Div. 1993), where "[t]he included hearsay to which plaintiff objected was a straightforward observation of a treating physician." See also Dinter v. Sears, Roebuck & Co., 252 N.J. Super. 84, 92, 599 A.2d 528 (App.Div. 1991) (no abuse of discretion for exclusion under Evid.R. 63(12) of statement to treating physician of cause of fall in the absence of testimony about relevance of cause to diagnosis or treatment); Biunno, Current N.J. Rules of Evidence, Comment to N.J.R.E. 808. Moreover, there were some questions raised in the record as to the meaning of the word "pathological" as used in the reports. There was legitimate concern expressed as to whether the diagnosis of pathological fracture, as used in the various reports, referred to the cause of the injury or to its impact on plaintiff's condition. See Bernard S. Maloy, M.D., Medical Dictionary for Lawyers (2d ed. 1951).
Because the redacted portions of the records were not admitted into evidence, defendants could not refer to them as material or data upon which the defense expert relied. Defendants claim that the exclusion of such evidence also warrants reversal. It is true that under the 1982 amendment to Evid.R. 56(2) an expert could rely on inadmissible evidence in rendering his opinion. See also N.J.R.E. 703 which similarly provides:

*285 RULE 703. BASES OF OPINION TESTIMONY BY EXPERTS
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
However, admission of such supporting facts and data would nullify the court's authority to exclude hearsay of a complex medical condition under N.J.R.E. 808 and prior case law.
It is possible that in some cases a strong limiting instruction might be able to permit jury consideration of evidence admitted only to show the basis for an expert's opinion. See Evid.R. 6; N.J.R.E. 105. Where prejudice or confusion would outweigh the probative value of such evidence, however, N.J.R.E. 403 (like former Evid.R. 4) would require its exclusion. Here Dr. Roger Berg, the defendant's expert, testified that he reviewed the hospital records and reached his diagnosis of pathological fracture based upon "[m]y analysis of the X-rays and bone scans that were supplied." Especially in view of that testimony, we do not find that the trial judge mistakenly exercised her discretion in prohibiting reference to the redacted records.

II.
The problem before us relates not only to the judge's rulings on redaction but also to the related question of whether defendants were unduly prejudiced by not being able to call witnesses. These witnesses were not named in discovery because of their alleged anticipation that unredacted reports would be admitted into evidence.
The record before us reflects no pretrial conference or pretrial memorandum, and we were told at oral argument that no such conference was conducted.
The issue concerning admissibility of the hospital reports and records, or portions thereof containing the diagnosis, and their use in examining the expert witnesses, only arose on the first day of trial. After jury selection but before openings, the plaintiff moved *286 for redaction of the diagnosis and references to the cause of the fractures. Argument continued into the next day after which the judge ruled:
THE COURT: What I'm gonna have to do is, we'll have the medical records. And after I hear the testimony, I'll make a decision on whether anything should be redacted out of that medical record. That on the basis of the fact that, A. it was not a complex. A. it was either not a complex situation, or B. the equities in the case demand that the court excise certain parts of that record as being unduly prejudicial. That would be like a Rule 4 hearing. And, but at this point in time, I'm gonna ask both of you not to refer to the expert opinions as set forth in  for your opening statements, as set forth in the medical records because I have to make an assessment of the complexity. That's number 1. And as to the issue of whether when we're dealing with the ultimate determination in the case. And I did not have a clear picture of that yesterday. Whether it would be appropriate to have opinions set forth by people who are not available for cross-examination, finding that the cases that were cited really don't give me a clear picture of what was included within the medical records exactly. And if they're simple opinions, it's conceded. I think that with the fractured nose, with the blood test, it's  it's a black or white situation. But when you have a situation where the fracture is such that the kind of fracture and the etiology of the fall is an issue in this case, I think that it become  it's  it's a different  it's a different situation. And goes really to the heart of the case. So at this point, I'm  I'm not gonna make that determination on what, in the hospital records should or should not be included. And we'll await that at the end of the case.
During plaintiff's case, the trial judge precluded defendants' cross-examining Dr. Krengel regarding the specific diagnosis in the medical records on causation. As noted above, however, defendants were permitted to develop that his diagnosis was different from whatever was contained in the records. After Dr. Krengel testified about the complex nature of the diagnosis, the trial judge ruled "that the opinion that is here involved involves difficult matters of interpretation and is also a central dispute in the case relating to causation." The judge, therefore, ruled that she was "exercising [her] discretion not to permit expert testimony contained in the hospital records to be brought forth unless the expert is available to testify in court and subject to cross-examination." Thereafter, the following colloquy occurred:
MS. JACOB [defendants' counsel]: I may call them. Just to let Your Honor 
THE COURT: Well, you can't. You didn't advise [plaintiff's counsel].
MS. JACOB: I'm advising him now. I have a couple of days.
*287 Defendants claimed to have notified plaintiff of the possible witnesses by answers to interrogatories which "alluded to all persons identified in medical records." However, the judge noted that defendants also failed to inform the court of the potential witnesses so that jurors could be asked if they knew them. The judge ruled that she would exclude their testimony as late-named witnesses.
On the following day the judge clarified her ruling:
You were specifically asked who your witnesses are or might be. This Court has many times  and that should be part of the order, that the Court inquired of any witnesses or possible witnesses, and those names were not included within the group.
........
It has always been the practice of this Court to name any possible witnesses, so that  to prevent just exactly what's happening here now, to bring in other witnesses.
The judge further held that the interrogatory responses were too vague to satisfy defendants' obligation to provide notice of witnesses:
So, in addition to the ruling of the Court that they were not mentioned as witnesses to the Court so I could explain that to the jury, they were also not specified in Answers to Interrogatories. And, even as fact witnesses and as expert witnesses, they would be excluded, because they didn't  a report was not offered, nor was a summary, of that which they were going to testify, offered, so I want to put that on the record.
By written order of February 25, 1993, the judge barred testimony of Doctors Suk Kim, a radiologist, and Dr. Ralph Kuhn, an orthopedist, "based on the fact that these physicians were not set forth on the witness list handed to the Court and about whom the jury was questioned just prior to trial, and because Mr. Kovacs [plaintiff's counsel] advised, after the trial call on Monday, February 22, 1993, that he intended to request redaction of reference to pathological fractures in the records."
Dr. Kim prepared radiology reports regarding plaintiff's left humerus and pelvis on the day of the fall. He stated in the report that the injuries to the humerus were "suggestive of pathologic fracture" and that plaintiff suffered a "pathologic fracture of *288 proximal left humerus." He also diagnosed a "pathologic fracture of the subtrochanteric lesion of the right hip." Dr. Kuhn prepared a consultation report regarding "[t]he very difficult question of treatment" because of "metastatic lesions" which prevent successful recovery "no matter what courses [sic] of treatment is performed." Defendants unsuccessfully sought to introduce their testimony, as well as their unredacted reports, other unredacted medical reports and the "entire discharge summary" to show plaintiff's metastasis and weakened condition in support of their theory of causation as well as damages.
Defendants now contend that the trial judge abused her discretion by imposing inappropriate "restrictions on defense experts." Defendants further contend they had no need to name or call these doctors until the judge excluded the evidence on which defendants relied. They also emphasize that plaintiff knew defendants intended to use the diagnosis given by Doctors Kuhn and Kim, and would have introduced the records but for the successful objection which necessitated defendants' otherwise untimely decision to call them. Thus, defendants insist plaintiff had knowledge of these witnesses and their opinions although they were not listed as trial witnesses, and plaintiff could not have been surprised nor prejudiced by their testimony. See Gaido v. Weiser, 227 N.J. Super. 175, 192-93, 545 A.2d 1350 (App.Div. 1988), aff'd, 115 N.J. 310, 558 A.2d 845 (1989); Amaru v. Stratton, 209 N.J. Super. 1, 10-14, 506 A.2d 1225 (App.Div. 1985).
We need not decide if the trial judge abused her discretion in these circumstances because we are satisfied from our careful review of the record that any mistaken exercise of her discretion was not "clearly capable of producing an unjust result." R. 2:10-2.
Defendants, in fact, presented an expert who reviewed the x-rays and bone scans themselves as well as the hospital records generally, and reached the diagnosis of pathological fracture. Thus, the jury was presented with defendants' theory of pathological fracture. The jury was also aware of the fact plaintiff's expert *289 disagreed with the diagnosis contained in the hospital records, although that diagnosis was not stated in the testimony. However, defendant's expert made clear that in reaching the diagnosis of pathological fracture he agreed with the diagnosis in the hospital records.
Moreover, in her summation for defendants, counsel forcefully emphasized that plaintiff's expert was "not a radiologist," "prepared his report without looking at the X-rays," "disagree[d] with some of what the radiologist said" and "[d]isagreed" with "parts of those radiology reports ... that didn't fit into his theory." She stated that Dr. Krengel also "decided to ignore" the discharge summary. It was thus clear to the jury, which had before it the reports with words crossed out thereon, that the hospital records contained a diagnosis different from that expressed by plaintiff's expert and consistent with that of the defense expert.
In upholding the verdict, we also note that the jury could have accepted the pathological diagnosis and still found that plaintiff's condition was caused by defendants' negligence in failing to take adequate precautions with a patient in plaintiff's state of health. See Tobia v. Cooper Hospital University Medical Center, 136 N.J. 335, 342, 643 A.2d 1 (1994) (error to charge contributory negligence where aged and infirm patient suffered hip fracture upon fall while unattended on stretcher). Plaintiff's counsel in his summation emphasized that some trauma was necessitated even under Dr. Berg's theory of causation and that whether or not the attendants "were lightly touching her back or not touching her at all [at the time of the fall], that was no assistance being rendered" to a patient in plaintiff's condition who had just been wheeled into the treatment room in a medicated state. He argued that the fall was not caused by her prior condition or the mere "standing there [or] putting weight on one leg," as defendants contended.

III.
Independent of their ability to call the doctors, defendants claim they should have been permitted to confront plaintiff's expert with *290 the diagnosis from the hospital records which the expert had reviewed. They draw support for their contention from N.J.R.E. 705.
As already noted, plaintiff's expert, Dr. Krengel, testified that he determined from a review of the hospital records that plaintiff had fallen from a stool while trying to ascend the radiology table, resulting in a traumatic fracture to her leg and arm. On cross-examination, defendants' attorney began to question Dr. Krengel on the contents of the medical records. Plaintiff's objections were sustained because the judge saw this as a means of circumventing the court's ruling against admitting the opinions expressed in the radiology records. However, as we noted above, the judge permitted questions which demonstrated that the expert's diagnosis of the fracture differed from that made in the records.
Extensive cross-examination of experts is generally permitted, subject to reasonable limitations imposed by the trial court in its discretion. We will not interfere with the exercise of this discretion "unless clear error and prejudice are shown." Glenpointe Associates v. Township of Teaneck, 241 N.J. Super. 37, 54, 574 A.2d 459 (App.Div.), certif. denied, 122 N.J. 391, 585 A.2d 392 (1990). See also State v. Martini, 131 N.J. 176, 263, 619 A.2d 1208 (1993); Janus v. Hackensack Hospital, 131 N.J. Super. 535, 540-41, 330 A.2d 628 (App.Div. 1974), certif. denied, 67 N.J. 95, 335 A.2d 47 (1975). The same reasons upholding the judge's decision on the redaction also support the judge's decision on limiting the cross-examination of Dr. Krengel. Cf. Theer, supra, 133 N.J. at 629-30, 628 A.2d 724; Daisey v. Keene Corp., 268 N.J. Super. 325, 331-32, 633 A.2d 979 (App.Div. 1993). Here, the judge permitted cross-examination in which plaintiff's expert expressly stated that he disagreed with the diagnosis in the hospital report and discharge summary. The judge, in essence, made a ruling which fairly balanced any potential unfairness by not permitting the cross-examination to go further. See Evid.R. 4; N.J.R.E. 403.

*291 IV.
Defendants further contend that there was no evidence of the applicable standard of care to guide the jury in its malpractice determination, and that the court erred in denying both their motion to dismiss at the close of plaintiff's case and their motion for new trial.
The court denied defendants' motion to dismiss at the close of plaintiff's case and ruled that a jury could find from the evidence presented that the therapists failed to act as reasonably prudent persons in not assisting plaintiff onto the radiation table, under the circumstances. The evidence revealed the hospital's clear awareness that plaintiff was suffering from bone cancer, needed a cane with which to walk, and came for treatment in a wheelchair. There was testimony that one of the radiation therapists was advised plaintiff could not walk without assistance. The court denied defendants' motion for a new trial based on its finding that "under the circumstances of this case, what happened is within the common experience of lay men and it would not necessitate expert testimony."
In most medical malpractice cases, expert testimony is required to establish the standard of care, since the negligence usually consists of providing inadequate care in a complex, technical field beyond the ordinary knowledge of the average juror. See Rosenberg by Rosenberg v. Cahill, 99 N.J. 318, 325, 492 A.2d 371 (1985); Parker v. Goldstein, 78 N.J. Super. 472, 480, 189 A.2d 441 (App.Div.), certif. denied, 40 N.J. 225, 191 A.2d 63 (1963). However, even in a medical malpractice case, there are some duties the breach of which would be clear to a juror of average experience and intelligence, so that expert testimony on the standard of care is not required. See, e.g., Cahill, supra, 99 N.J. at 325-27, 492 A.2d 371; Klimko v. Rose, 84 N.J. 496, 503-04, 422 A.2d 418 (1980).
Plaintiff sought damages because of a fall in the hospital attributable to the hospital's negligence. The complaint alleged negligence *292 because the hospital employees failed to secure the stool or table with a handle bar or grip bar, failed to assist plaintiff "in climbing on the table," failed to maintain the radiation room in a reasonably safe condition, and failed to attend to "plaintiff's special needs."
We agree with the trial judge that this was "not a medical malpractice action" requiring expert testimony on the standard of care. See Tierney by Tierney v. St. Michael's Medical Center, 214 N.J. Super. 27, 31, 518 A.2d 242 (App.Div. 1986), certif. denied, 107 N.J. 114, 526 A.2d 184 (1987) (applying res ipsa loquitur in a case involving a fall from a hospital crib). The majority view is that jurors are competent to assess simple negligence occurring in a hospital without expert testimony to establish the standard of ordinary care, as in any other negligence case:
A number of courts have held that the question whether restraints or special supervision should have been provided to prevent an accident is not one which requires specialized knowledge, but is a matter of common sense which the jury is competent to assess without expert guidance. There is, however, some precedent to the contrary. [John E. Theuman, Annotation, Hospital's Liability for Patient's Injury or Death as Result of Fall From Bed, 9 A.L.R.4th 149, 155 (1981).]
See also Tierney, supra, 214 N.J. Super. at 31, 518 A.2d 242. In any event, we are satisfied that expert testimony was not required in this case with respect to the applicable standard of care. See Jenoff v. Gleason, 215 N.J. Super. 349, 357-58, 521 A.2d 1323 (App.Div. 1987).

V.
In denying a new trial, the trial judge noted the "great pain" plaintiff suffered as a result of the fractures. Plaintiff spent a considerable portion of her final six months in traction and immobilized as a result of defendants' negligence. Based on the proofs presented at trial, the judge was correct in denying a new trial, as it did not "clearly and convincingly appear[] that there was a miscarriage of justice under the law." R. 4:49-1. And as a new trial even as to damages was inappropriate, the denial of a *293 remittitur was also warranted. See, e.g., Taweel et al. v. Starn's Shoprite Supermarket, 58 N.J. 227, 231, 276 A.2d 861 (1971).

VI.
We are satisfied that the other issues raised by defendant do not warrant discussion. R. 2:11-3(e)(1)(B), (C), (E).
The judgment is affirmed.
NOTES
[1] The case was commenced by Mary Nowacki and her husband during Mary's life. Her husband, as executor of her estate, was substituted as plaintiff after Mary's death. We shall refer to Mary as "plaintiff" throughout this opinion.
[2] The case was tried in February 1993, after the 1992 amendments to the New Jersey Rules of Evidence were adopted, but before their effective date. See N.J.S.A. 2A:84A-33 et seq. and Appendix A.
[3] Defendants' expert, Dr. Roger Berg, a radiologist, later testified at an Evid.R. 8 hearing that a pathological fracture involves a "simple" diagnosis. He testified before the jury that the fractures were pathological and that, while stepping onto the stool, plaintiff put "all of her weight to the right femur, and the femur, being severely diseased by cancer, snapped under that stress." On cross-examination, he admitted that the injury to the arm occurred as a result of plaintiff's loss of balance due to the fractured leg she suffered and resulting fall to the floor.