291 N.J. Super. 31 (1996)
676 A.2d 1110
MICHAEL GIANTONNIO, PLAINTIFF-APPELLANT,
v.
GERALDINE TACCARD, GARDNER FUNERAL HOME, DEFENDANTS-RESPONDENTS, AND ARTHUR TACCARD AND JOHN DOES 1 THROUGH 10 (FICTITIOUS NAMED DEFENDANTS), INDIVIDUALLY, JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 16, 1996.
Decided June 6, 1996.
*36 Before Judges BAIME, VILLANUEVA and KIMMELMAN.
Vincent J. Ciecka, attorney for appellant (Jeffrey Grudko, on the brief).
Stephen E. Gertler, attorney for respondent Gardner Funeral Home (John R. Moeller, Jr., on the brief).
Chierici & Wright, Moorestown, for respondent Geraldine Taccard (David B. Wright, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
Michael Giantonnio, a participant in a funeral procession organized and led by Gardner Funeral Home (Gardner), proceeded through a red light and collided with an automobile driven by Geraldine Taccard. Both Giantonnio and Taccard sued each other and Gardner. The actions were consolidated, and the issues of liability and damages were bifurcated. A jury found that Giantonnio was negligent and that his negligence was a proximate cause of the accident. The jury also found that Taccard was negligent, but that her negligence was not a proximate cause of the collision. Finally, the jury concluded that Gardner was free of fault. Giantonnio appeals. We affirm the judgment in favor of Gardner, but reverse and remand for a new trial regarding Taccard's liability.

*37 I.
On December 20, 1990, Giantonnio and his wife arrived at Gardner Funeral Home to attend the funeral of his wife's uncle. The couple lived in a different town, and neither of them was familiar with the area in which the funeral was to be held. Gardner had posted the name of the church at the funeral home and had published the same information in a local newspaper. It is undisputed that when Giantonnio left the funeral home he knew both the name of the church at which the funeral was to be conducted and the town in which the church was located.
Following the final viewing of the body, Giantonnio and his wife were directed to their car and told that if they wished to participate in the funeral procession they would receive further instructions in the parking lot. The two were told by a Gardner employee to keep their vehicle's headlights illuminated, follow the car in front of their automobile, and stay in line. The employee also placed a sticker marked "funeral" on the passenger side of the windshield. Giantonnio received no further instructions regarding what he should do if he became separated from the rest of the procession, no directions to the church, and no assurances that the front of the procession would pull to the side of the road and wait for the remainder of the cars if it were interrupted by traffic signals. In addition, Giantonnio was given no advice as to whether he should ignore traffic signals or obey them while travelling in the procession.
The procession then left the funeral home. All of Gardner's vehicles, namely the lead car, hearse, and flower car, were positioned at the front of the procession. The testimony as to the position of Giantonnio's vehicle was somewhat inconsistent, but it appears that he was located somewhere in the middle.
The procession turned southbound onto Chews Landing Road. As it approached the intersection with Laurel Road, described at trial as a "major" one, the front of the procession proceeded through a green light. Taccard, driving a 1981 Buick and facing westbound, was stopped at the red light on Laurel Road. She *38 testified that she had initially approached the intersection with a green light, but that she had stopped out of deference to the funeral procession. In any event, the light changed before the entire procession had proceeded through the intersection. The driver of the automobile in the lane next to Taccard's proceeded into the intersection, but stopped when he noticed that the funeral procession was continuing. Taccard, who claimed she could see a quarter of a mile to her right up Chews Landing Road, determined that the intersection was clear and proceeded into it. The front of her vehicle collided with the rear driver's side quarterpanel of Giantonnio's truck.
Giantonnio had been following the cars in front of him. He was approximately two car lengths behind the automobile immediately ahead of him and was travelling at a speed of approximately twenty miles per hour. When he initially approached the intersection, Giantonnio noticed that the light was still green. He did not look up at the light again prior to entering the intersection, and he did not see Taccard's vehicle until the moment of impact. When asked why he entered the intersection without ascertaining the color of the controlling traffic signal, Giantonnio disclaimed any anxiety about being separated from the funeral cars and admitted that he was under the impression that he could ignore a red light because he was travelling in a funeral procession.
Gardner's president testified that the home normally did not give any directions to the church or cemetery unless requested, but customarily posted the name of the church and the town in which it was located and published this information in the local newspaper. The witness also testified that the instructions given to Giantonnio were the usual ones and that under no circumstances were Gardner employees to instruct funeral procession participants either to ignore or obey traffic signals. The witness noted that motorists often stopped to permit a funeral procession with a red light to proceed. She conceded that employees in the lead car were responsible for monitoring vehicles at the rear of the procession.

*39 II.
We first address Giantonnio's arguments relating to Gardner. Giantonnio contends the trial court erred by (1) refusing to instruct the jury that Gardner owed a duty of due care to persons participating in its funeral procession, (2) requiring expert testimony respecting the standard of care owed by Gardner, and (3) excluding testimony regarding the availability of police escort services. We examine these contentions seriatim.

A.
Giantonnio contends that Gardner, having undertaken to organize and lead the funeral procession, breached its duty to exercise due care, thus causing the accident with Taccard. As developed in the arguments of counsel, Giantonnio claimed Gardner deviated from the applicable standard of care by failing to (1) procure a police escort for the procession, (2) give persons participating in the procession oral or written directions to the church, (3) assure persons that the procession would stop at the side of the road in the event those situated in the rear were separated by a traffic signal, (4) instruct persons in the procession that they were not authorized to ignore traffic signals, and (5) position a funeral home vehicle in the middle of the procession to monitor the progress of straggling automobiles.
Prior to trial, the court had expressed the view that expert testimony would be necessary concerning the duty and standard of care owed by a funeral home to persons participating in a funeral procession. Despite this warning, Giantonnio presented no expert testimony on these subjects. Noting this omission, the trial court refused Giantonnio's request to instruct the jury that a funeral home owes "a duty to refrain from creating an unreasonably hazardous situation for those participating in [a] funeral procession." At Taccard's request, the court charged the jury that Gardner could be found negligent if it violated N.J.S.A. 39:4-93, which provides "[i]f a procession takes longer than five minutes to pass a given point, it shall be interrupted every five minutes for *40 the passage of traffic which may be waiting." Giantonnio argues that Gardner's common law duty was broader than that provided by the statute and the trial court thus committed reversible error.
We stress at the outset that neither N.J.S.A. 39:4-93 nor any other statute grants a right of way to a person in a funeral procession when confronted with a red light at a controlled intersection. "We know of no law, statutory or otherwise, in this state which permits a member of a funeral procession to disregard a traffic signal unless directed to do so by a police officer." Pohi v. Topal, 156 N.J. Super. 27, 29, 383 A.2d 435 (App.Div. 1978); see N.J.S.A. 39:4-80. Although many drivers yield to those participating in a funeral procession, their deference is a matter of custom and practice and not a requirement of the law. The question, therefore, is whether a funeral home owes a duty to refrain from creating an unreasonably hazardous situation for those participating in the procession.
We begin with the thesis that wronged persons ordinarily should be compensated for their injuries and that generally those responsible should bear the cost of their tortious conduct. Weinberg v. Dinger, 106 N.J. 469, 486-87, 524 A.2d 366 (1987); People Express Airlines, Inc. v. Consolidated Rail Corp., 100 N.J. 246, 255, 495 A.2d 107 (1985); Kelly v. Gwinnell, 96 N.J. 538, 543-44, 476 A.2d 1219 (1984). Forcing tortfeasors to pay for the harm they have wrought provides an incentive for reasonable conduct and a deterrence against behavior heedless of the risk to others. Weinberg v. Dinger, 106 N.J. at 487, 524 A.2d 366. "Negligence is tested by whether the reasonably prudent person at the time and place should recognize and foresee an unreasonable risk or likelihood of harm to others." Rappaport v. Nichols, 31 N.J. 188, 201, 156 A.2d 1 (1959). In most cases, the justice of imposing a duty of due care "is so clear that the cause of action in negligence is assumed to exist simply on the basis of the actor's creation of an unreasonable risk of foreseeable harm resulting in injury." Kelly v. Gwinnell, 96 N.J. at 544, 476 A.2d 1219. However, in cases such as the present one where there exists some doubt, the court *41 must make a "value judgment" as to whether a duty of care is owed from the actor to the injured party. Ibid. This judgment is ultimately a question of both fairness and public policy. "`The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution.'" Ibid. (quoting Goldberg v. Housing Auth. of Newark, 38 N.J. 578, 583, 186 A.2d 291 (1962)); see also Carvalho v. Toll Bros. and Developers, 143 N.J. 565, 572-73, 675 A.2d 209 (1996); Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110 (1993); Butler v. Acme Markets, Inc., 89 N.J. 270, 276, 445 A.2d 1141 (1982).
To that extent, resolution of the question of whether a duty is owed and to whom often involves no more than a value judgment upon a factual complex rather than an evident application of a precise rule of law. The ultimate determination inevitably reflects the seasoning and experience of the one who judges. While noting that reservation, we conclude that Gardner, by undertaking to organize and lead the funeral procession, arguably owed a duty to refrain from creating an unreasonably hazardous condition for those participating in the procession. The undisputed evidence in this case, as well as common experience, indicate that a funeral home provides a service for a fee to family members and friends of the deceased. A funeral home usually transports the deceased and his or her family to the location of the funeral and burial. Incidental to this service is the participation of other mourners in a procession from the funeral home to the church or cemetery. The funeral procession is a regular and expected component of a funeral service. It is reasonably foreseeable that some members of the procession may be unfamiliar with the route to and location of the church or cemetery. These individuals often rely, at least to some extent, on the funeral home to organize and lead the way to the ultimate destination. "The foreseeability of harm is a significant consideration in the determination of a duty to exercise reasonable care." Carvalho v. Toll Bros. and Developers, 143 N.J. at 572, 675 A.2d 209. Depending upon the circumstances, *42 the funeral home may bear some responsibility for the safety of participants in the procession.
Our research discloses no reported New Jersey opinion dealing with this precise issue. The question has received uneven treatment in other jurisdictions. However, the clear weight of authority and the most recent decisions favor recognizing a funeral home's duty to refrain from creating an unreasonably hazardous condition for those participating in a funeral procession organized and supervised by it. See Union Park Memorial Chapel v. Hutt, 670 So.2d 64 (Fla. 1996); Maida v. Velella, 69 N.Y.2d 1026, 517 N.Y.S.2d 912, 511 N.E.2d 56 (1987).
We emphasize the limited contours of our decision. We hold that under certain circumstances a funeral home may owe the duty to refrain from creating an unreasonably dangerous situation for those participating in its funeral procession. We offer no opinion respecting the substantive content of that duty, i.e., the standard of care owed by the funeral home. As we point out in the next section, the standard of care with which the funeral home must comply is a component or element of the plaintiff's cause of action that must be established by reliable evidence.

B.
That leads us to plaintiff's contention that the trial court erred in its conclusion that expert testimony was necessary to establish the requisite standard of care and Gardner's deviation from that standard. We agree with the trial court that plaintiff's case was fatally flawed by the failure to present reliable expert testimony on the subject.
We are concerned with the need for expert testimony only as it relates to Giantonnio's claim that Gardner was negligent for failing to procure a police escort for the funeral procession. In light of Gianntonio's candid admission during his testimony that he was not anxious about being separated from the remainder of the procession when he went through the red light, any negligence on *43 Gardner's part in failing to provide directions to the church, to reposition its vehicles, or to provide assurances that the procession would pull over in case of separation could not have been a proximate cause of the collision. In addition, we reject out of hand the notion that a funeral home's duty to refrain from creating an unreasonably hazardous situation for funeral participants encompasses the obligation to affirmatively instruct those participants to obey all traffic signals.
The test for determining whether expert testimony is required is whether the matter under consideration is so esoteric or specialized that jurors of common judgment and experience cannot form a valid conclusion. Hopkins v. Fox & Lazo Realtors, 132 N.J. at 450, 625 A.2d 1110; Butler v. Acme Markets, Inc., 89 N.J. at 283, 445 A.2d 1141; see also Rosenberg v. Cahill, 99 N.J. 318, 325, 492 A.2d 371 (1985); Buckelew v. Grossbard, 87 N.J. 512, 527, 435 A.2d 1150 (1981); Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 222 N.J. Super. 363, 374, 536 A.2d 1309 (App.Div. 1988), aff'd in part, rev'd in part on other grounds, 116 N.J. 517, 562 A.2d 208 (1989); Wyatt by Caldwell v. Wyatt, 217 N.J. Super. 580, 591-92, 526 A.2d 719 (App.Div. 1987). The facts of a given case may be such that a layperson's common knowledge is sufficient to permit a jury to find that the duty of care has been breached without the aid of an expert's opinion. See, e.g., Black v. Public Serv. Elec. & Gas Co., 56 N.J. 63, 78, 265 A.2d 129 (1970); Sommers v. McKinney, 287 N.J. Super. 1, 10, 670 A.2d 99 (App. Div. 1996); Nowacki v. Community Medical Center, 279 N.J. Super. 276, 291-92, 652 A.2d 758 (App.Div.), certif. denied, 141 N.J. 95, 660 A.2d 1194 (1995); Kajetzke v. New Jersey Bell, 241 N.J. Super. 193, 195-97, 574 A.2d 539 (App.Div. 1990).
Against this backdrop, we conclude that expert testimony regarding Gardner's standard of care and breach of that standard was critical to the viability of Giantonnio's case. In reaching this conclusion, we recognize that a large segment of the public drives motor vehicles and, thus, can be expected to be familiar with hazardous conditions that commonly develop on the roadways. *44 See Kajetzke v. New Jersey Bell, 241 N.J. Super. at 196-97, 574 A.2d 539. Had Gardner's employees instructed participants in the procession to disregard traffic signals, for example, we would have no difficulty in saying that expert testimony was not necessary to establish the funeral home's deviation from its standard of care. However, the safe conduct of a funeral procession constitutes a complex process involving assessment of a myriad of factors such as traffic conditions, particular road hazards, the length of the procession, time constraints, the distances involved, traffic volume and the availability of police escort services. We believe that this calculus is beyond the ken of the average juror.

C.
We reject Giantonnio's contention that the trial court erred by excluding the testimony of the police officer who investigated the accident. The officer would have testified that he and other members of the police department had provided traffic control services for funeral processions on prior occasions at the funeral home's request. The officer apparently had no personal knowledge respecting the availability of police escort or traffic control services at the time of plaintiff's accident, and his testimony would not have been sufficient to establish a standard of care. We find no abuse of the trial court's discretion.

III.
We turn to plaintiff's arguments respecting Taccard. We agree with Giantonnio that the trial court erred by denying his motion for a new trial. A trial court should grant a motion for a new trial based on the weight of the evidence "if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." R. 4:49-1(a). The standard for appellate review is essentially the same. Dolson v. Anastasia, 55 N.J. 2, 7, 258 A.2d 706 (1969). We must defer to the views of the trial court with respect to the credibility of *45 witnesses and the "feel" of the case, but make our own determinations as to plausibility, consistency, and other issues apparent on the face of the written record. Ibid.
As we noted earlier, the jury found that Taccard was negligent in failing to make reasonable observations when entering the intersection, but that such negligence was not a proximate cause of the accident. In Pappas v. Santiago, 66 N.J. 140, 329 A.2d 337 (1974), our Supreme Court was faced with similar facts. The Court held that a new trial should have been granted on the full issue of the defendant's liability, i.e., negligence and proximate cause. Id. at 143, 329 A.2d 337. The Court said that "in the circumstances of this case [it] [could not] conceive of any act or omission amounting to negligence on the part of [the defendant] in the operation of her car that would not have contributed causally to the happening of the accident," and that "[o]n this basis the jury verdict ..., finding negligence but absence of proximate cause, was patently inconsistent." Ibid. Although ordinarily questions of proximate cause are factual ones left to the jury for its determination, see Scafidi v. Seiler, 119 N.J. 93, 101, 574 A.2d 398 (1990); Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 209-10, 485 A.2d 305 (1984), the Court's decision in Pappas irresistibly leads to the conclusion that a new trial is required in this case.
We also agree with Giantonnio's contention that the trial court should not have instructed the jury that if it found "one of the drivers proceeded through a red light, th[e] driver would be negligent" as a matter of law. The determination that a party has violated a statutory duty ordinarily is not conclusive on the issue of negligence, but instead is a circumstance which the jury should consider in assessing liability. Waterson v. General Motors Corp., 111 N.J. 238, 263, 544 A.2d 357 (1988); see also Eaton v. Eaton, 119 N.J. 628, 642, 575 A.2d 858 (1990). Where, however, the statute incorporates a common law duty of care, such as reasonableness, a violation of the statute is negligence. Eaton v. Eaton, 119 N.J. at 642-43, 575 A.2d 858; Dolson v. Anastasia, 55 N.J. at *46 10-11, 258 A.2d 706; Parks v. Pep Boys, 282 N.J. Super. 1, 15-16, 659 A.2d 471 (App.Div. 1995).
N.J.S.A. 39:4-81, the traffic signal statute, does not incorporate a common law duty of reasonable care. Rather, it imposes a flat duty on motorists to refrain from proceeding through a red light unless otherwise directed by a police officer. Consequently, a violation of the statute is only evidence of negligence under present law. See Paiva v. Pfeiffer, 229 N.J. Super. 276, 281, 551 A.2d 201 (App.Div. 1988) (violation of the second paragraph of N.J.S.A. 39:4-89 (the tailgating statute at issue in Dolson), which sets a minimum following distance for trucks of 100 feet, is only evidence of negligence); see also Horbal v. McNeil, 66 N.J. 99, 103-05, 328 A.2d 604 (1974). Thus, it was error for the court in the present case to instruct the jury that proceeding through a red light constitutes negligence in itself. While we would be inclined to find the error harmless because Giantonnio's negligence is so apparent from the face of the record, we admonish that the error should not be repeated at the second trial.
The portion of the judgment incorporating the jury's finding of no cause for action against Gardner is affirmed. The portion of the judgment in favor of Taccard is reversed, and the matter is remanded to the Law Division for a new trial.