**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1794-19

CAROLYN SCHWARTZ,

    Plaintiff-Appellant,

v.

KESSLER INSTITUTE FOR
REHABILITATION and
SELECT MEDICAL
CORPORATION,

    Defendants-Respondents.

_____

Argued June 8, 2021 – Decided June 28, 2021

Before Judges Haas and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2311-16.

Benjamin M. Del Vento, Jr., argued the cause for appellant.

Walter F. Kawalec, III, argued the cause for respondents (Marshall Dennehey Warner Coleman & Goggin, attorneys; Walter F. Kawalec, III and Ryan T. Gannon, on the brief).

PER CURIAM

In this appeal, plaintiff Carolyn Schwartz challenges a September 13, 2019 Law Division order dismissing her claims against defendants Kessler Institute for Rehabilitation and Select Medical Corporation. We affirm.

I.

We begin by summarizing the facts submitted by the parties on defendants' summary judgment motion, viewed in a light most favorable to plaintiff as the non-moving party. Brill v. Guardian Life Ins., 142 N.J. 520, 540 (1995). Plaintiff was a patient at defendants' facility in Chester between April 3, 2014 and April 17, 2014, while recovering from right total knee replacement surgery. During her stay, plaintiff used either a wheelchair or walker. On or around April 4, 2014, Lisa Knight, a rehabilitation assistant, was assisting plaintiff from her wheelchair to the toilet, when plaintiff claims Knight improperly pushed her causing her knee to buckle, resulting in a tear to her patellar tendon.

Plaintiff filed a seven-count complaint, which she later amended, alleging defendants violated their obligations under the Nursing Home Act, N.J.S.A. 30:13-1 to -19, and corresponding state and federal rules and regulations. She also claimed defendants were negligent during and after the April 4, 2014 incident, and that they breached their contract with her to receive "quality care"

A-1794-19

in compliance with her statutory rights as a patient. She specifically alleged that defendants had a duty to exercise reasonable care, "the degree of care being in proportion to [plaintiff's] known physical and mental ailments" and that "[d]efendants were bound to exercise that degree of care, skill[,] and diligence used by . . . nursing homes . . . in the community."

Plaintiff testified at deposition that on April 4, 2014, Knight and a second unnamed rehabilitation assistant were transferring her from her wheelchair to the toilet. She stated that after she stood up from her wheelchair without assistance, Knight pushed her from behind, after which she heard a "large pop" in her knee and felt a "stabbing pain." Because plaintiff's legs were unstable, Knight grabbed her arm, which prevented plaintiff from falling to the ground.

Plaintiff did not recall the second aide touching her at any point during the incident. She "reviewed [the incident] over in [her] mind" and testified she believed Knight's push was "intentional." However, plaintiff's daughter provided deposition testimony stating that plaintiff called her after the incident and told her "she slipped, but [that] she didn't actually fall on the floor." Defendants' patient care notes confirm the incident, and that plaintiff heard a popping noise in her knee.

3

Knight testified that she was employed by defendants as a rehabilitation assistant for approximately a year and a half at the time of the incident. Prior to her employment, Knight had never worked in the healthcare industry. She testified her position did not require any specific training or certification beyond a high school diploma, but that she completed in-person and online training courses throughout the year.

Knight explained her training included instructions on the appropriate levels of care when transferring patients from a mobility device, such as a wheelchair, to a toilet. The first level of care required Knight to only provide eye contact to "guard[]" the patient. Knight called the second level "min[imal] assist," and applied when patients "basically [move] themselves and [she] just [provides] a little contact" such as "holding their arm." Under the third level, which she characterized as "moderate" assistance, Knight would provide a "bit more hands-on" aid. The highest level, or "[m]aximum assistance," obligated Knight to use "[a]ll [her] strength" to ensure a patient did not fall during the transfer.

In assessing the necessary level of assistance, Knight obtained information from an attending nurse, and data contained on a patient's coded wristband, residence information boards, or their mobility device. Knight stated

4

she was "[v]ery active" in performing these types of transfers and never recalled any difficulty with any patient during a transfer. She also did not recall plaintiff or the incident specifically.

Plaintiff submitted an affidavit of merit[1] dated August 25, 2016 from Rose Marie Valentine, R.N., L.N.H.A., a registered nurse and licensed nursing home administrator. Valentine opined there was a reasonable probability that the "care, skill, or knowledge exercised or exhibited in the treatment, practice, or work" of defendants towards plaintiff fell outside professional treatment standards. She did not, however, address whether Knight's assistance in transferring plaintiff deviated from accepted standards of care.

Valentine also submitted an expert report and noted plaintiff's rehabilitation progress "declined" after the transfer incident and that defendants and their employees deviated from acceptable standards of nursing care by failing to properly assess and alleviate plaintiff's pain after her knee "pop." An

---

[1] N.J.S.A. 2A:53A-27 states that a plaintiff pursuing a claim for injuries "resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation," must provide an affidavit of merit by an appropriately-licensed person who attests under oath "that there exists a reasonable probability that the care, skill or knowledge exercised" by the defendant deviated from accepted professional standards. Neither party has asserted that Knight was a licensed professional or that plaintiff failed to comply with N.J.S.A. 2A:53A-27.

expert report submitted by defendants disputed Valentine's conclusion and determined defendants' employees did not deviate from the applicable standards of care in their treatment of plaintiff.

Defendants thereafter moved for summary judgment on plaintiff's breach of contract and claims for violations of their nursing home obligations. In a January 20, 2017 order, Judge Thomas R. Vena granted defendants' application. Judge Vena further granted defendants summary judgment in a June 23, 2017 order dismissing with prejudice "all claims of negligence or vicarious liability based on the actions of [any] physician[] or physical therapist[]."[2] As a result, only plaintiff's claims for negligence and vicarious liability regarding the April 4, 2014 incident remained.

Plaintiff also submitted an expert report prepared by Burgess Lee Berlin, M.D., P.A., in which he concluded plaintiff tore her patellar tendon as a consequence of the April 4, 2014 incident, resulting in subsequent surgeries, chronic pain, and swelling. David Bullek, M.D., an expert for defendant, agreed that plaintiff tore her patellar tendon during the April 4, 2014 incident, but concluded "[t]here [was] no evidence [that] a forceful event by the aide . . .

---

[2] Plaintiff does not challenge the January 20, 2017 or June 23, 2017 orders on appeal.

6

contributed" to the rupture, other than plaintiff's deposition testimony. Dr. Bullek also concluded plaintiff's care at defendants' facility was "appropriate and with no violation of the standard of care."

After engaging in pretrial discovery, defendants moved for summary judgment to dismiss plaintiff's remaining vicarious liability-based negligence claims involving Knight's actions because "plaintiff d[id] not have expert testimony to submit to the jury that the transfer . . . was negligently performed causing the patella tendon rupture." Defendants alternatively argued they could not be vicariously liable for any alleged intentional act performed by Knight.

In a September 13, 2019 order, Judge Vena granted defendants' application and dismissed plaintiff's remaining claims. In his corresponding oral decision, Judge Vena concluded plaintiff could not establish a negligence claim "without expert testimony as to what [the applicable] duty of care was and how it was breached." The judge acknowledged defendants had procedures on how to correctly transfer a patient, but without an expert to address any violation of the appropriate standard of care, it would be "impossible" for the jury to address that critical issue.

Plaintiff filed a motion for reconsideration, which Judge Vena denied in a November 22, 2019 order. In his accompanying oral decision, the judge

A-1794-19

reasoned nothing presented in plaintiff's motion "convince[d him] that the determination the [c]ourt made on September 13[], 2019, should be changed." This appeal followed.

## II.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015) (citations omitted). Summary judgment must be granted if the court determines "that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540. We accord no special deference to the trial judge's conclusions on issues of law. Nicholas v. Mynster, 213 N.J. 463, 478 (2013) (citing Zabilowicz v. Kelsey, 200 N.J. 507, 512-13 (2009)).

## III.

Plaintiff argues Judge Vena erred in granting defendants summary judgment because the applicable standard of care Knight owed plaintiff, as a

8

non-licensed, non-professional, is within the common knowledge of jurors and does not require an expert. In support, plaintiff relies primarily on <u>Nowacki v. Cmty. Med. Ctr.</u>, 279 N.J. Super. 276, 292 (App. Div. 1995), and asserts Knight's testimony regarding defendants' training, and her description of the varying degrees of support rehabilitation assistants provide during transfers, provided the necessary context to establish Knight's duty of care and breach. We disagree.

To establish negligence, a plaintiff must prove: "(1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." <u>Davis v. Brickman Landscaping, Ltd.</u>, 219 N.J. 395, 406 (2014) (quoting <u>Jersey Cent. Power & Light Co. v. Melcar Util. Co.</u>, 212 N.J. 576, 594 (2013)). "[P]laintiff bears the burden of establishing those elements 'by some competent proof.'" <u>Townsend</u>, 221 N.J. at 51 (quoting <u>Davis</u>, 219 N.J. at 406).

"In most negligence cases, the plaintiff is not required to establish the applicable standard of care." <u>Davis</u>, 219 N.J. at 406 (citing <u>Sanzari v. Rosenfeld</u>, 34 N.J. 128, 134 (1961)). In those instances, "[i]t is sufficient for [the] plaintiff to show what the defendant did and what the circumstances were. The applicable standard of conduct is then supplied by the jury[,] which is competent to determine what precautions a reasonably prudent man in the position of the

defendant would have taken." Id. 406-07 (alterations in original) (citation omitted). "Such cases involve facts about which 'a layperson's common knowledge is sufficient to permit a jury to find that the duty of care has been breached without the aid of an expert's opinion.'" Ibid. (quoting Giantonnio v. Taccard, 291 N.J. Super. 31, 43 (App. Div. 1996)).

"In some cases, however, the 'jury is not competent to supply the standard by which to measure the defendant's conduct,' and the plaintiff must instead 'establish the requisite standard of care and [the defendant's] deviation from that standard' by 'present[ing] reliable expert testimony on the subject.'" Ibid. (alterations in original) (citations omitted); see also N.J.R.E. 702 (permitting expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue").

The Supreme Court has explained that, "when deciding whether expert testimony is necessary, a court properly considers 'whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the [defendant] was reasonable.'" Davis, 219 N.J. at 407 (alteration in original) (quoting Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982)); see also Hubbard v. Reed, 168 N.J. 387, 394 (2001) (holding expert testimony is not needed under the affidavit of merit

statute when the jury's "common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence" (quoting Est. of Chin v. St. Barnabas Med. Ctr., 160 N.J. 454, 469 (1999))). In cases where "the factfinder would not be expected to have sufficient knowledge or experience," expert testimony is needed because the jury "would have to speculate without the aid of expert testimony." Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001) (citation omitted).

Our courts have previously found expert testimony is required to establish an accepted standard of care with regard to: "ordinary dental or medical malpractice," Sanzari, 34 N.J. at 134-35; "the responsibilities and functions of real-estate brokers with respect to open-house tours," Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 444 (1993); "the safe conduct of a funeral procession," Giantonnio, 291 N.J. Super. at 44; the "conduct of those teaching karate," Fantini v. Alexander, 172 N.J. Super. 105, 108 (App. Div. 1980); "applying pertinent skydiving guidelines," Dare v. Freefall Adventures, Inc., 349 N.J. Super. 205, 215 (App. Div. 2002); the "repair and inspection" of automobile engines, Ford Motor Credit Co. v. Mendola, 427 N.J. Super. 226, 237 (App. Div. 2012); "the inspection of fire sprinklers by qualified contractors," Davis, 219 N.J. at 408; and the duties of a licensed nurse when "a patient remove[s a

medical] tube herself and refuse[s] replacement," <u>Cowley v. Virtua Health Sys.</u>, 242 N.J. 1, 9 (2020).

Conversely, our courts have found expert testimony is not required to establish the appropriate standard of care for explaining: "the dangers that might follow when a lit cigarette is thrown into a pile of papers or other flammable material," <u>Scully v. Fitzgerald</u>, 179 N.J. 114, 127 (2004); whether an attorney in a malpractice suit should have "briefed an issue," "report[ed] . . . settlement discussion[s] accurately," or "recommend[ed] a disposition of the case" after settlement discussions, <u>Sommers v. McKinney</u>, 287 N.J. Super. 1, 12 (App. Div. 1996); or the "risk involved in [a chiropractor] repeating the further neck adjustment[s]" after the chiropractor knew the patient became uncharacteristically dizzy and unwell after treatment, <u>Klimko v. Rose</u>, 84 N.J. 496, 505 (1980).

In <u>Nowacki</u>, the plaintiff filed negligence claims against a hospital and its employee therapists after the plaintiff sustained injuries after she fell from a radiation treatment table. 279 N.J. Super. at 279-80. The plaintiff alleged that while she was trying to lift herself on the table, the hospital's employees stood nearby and there was "some question as to whether [one employee] had her hand on [the] plaintiff's back." <u>Id.</u> at 281. The plaintiff alleged the employees "failed

to secure the stool or table with a handle bar or grip bar, failed to assist [the] plaintiff 'in climbing on the table,' failed to maintain the radiation room in a reasonably safe condition, and failed to attend to '[the] plaintiff's special needs.'" Id. at 292. After the jury returned a verdict finding the hospital and employees liable, the defendants asserted in an unsuccessful motion for new trial that the plaintiff failed to provide evidence of the applicable standard of care. Id. at 279, 291.

We affirmed and noted that in certain circumstances the standard of care "would be clear to a juror of average experience and intelligence, so that expert testimony on the standard of care is not required." Id. at 291 (citations omitted). We concluded the issue of "whether restraints or special supervision should have been provided [in a hospital setting] to prevent an accident" was a matter of "common sense" and "simple negligence," and did not require an expert to explain the standard of care. Id. at 292 (citation omitted).

As noted, Judge Vena determined the applicable standard of care was not within the ordinary ken of typical jurors, and plaintiff therefore, required an expert report on liability. We agree, as jurors of "common judgment and experience," Davis, 219 N.J. at 407, would be unacquainted with the appropriate protocols and methods of transferring disabled patients in a rehabilitation

A-1794-19

setting. Such transfers, as Knight stated, are not simple or straightforward events.

Jurors would be unfamiliar with the type and extent of training rehabilitation assistants receive, or the factors necessary to correctly evaluate the amount of assistance required. As Knight described, such an assessment required her to consider multiple factors including information provided by the attending nurse, data contained on a patient's coded wristband, and the type of mobility device used by a patient. We conclude in such circumstances an expert was necessary to explain whether the transfer and force used by Knight, and as described by plaintiff, deviated from the applicable standard of care.

Unlike the therapists in <u>Nowacki</u>, 279 N.J. Super. at 292, Knight's alleged negligence stems from her duties as a rehabilitation assistant and whether she performed duties consistent with the applicable standard of care of similar professionals. Indeed, plaintiff specifically alleged in her complaint that defendants' duty of care was defined "by . . . nursing homes . . . in the community." The plaintiff in <u>Nowacki</u>, however, asserted the employees failed to fulfill their ordinary duties in securing the table, or assisting her, not that they violated their unique job functions and responsibilities.

At bottom, we are satisfied that a determination to the appropriate standard of care, and any deviation, related to Knight's transfer of plaintiff, involved an "assessment of a myriad of factors" that are "beyond the ken of the average juror." Giantonnio, 291 N.J. Super. at 44. We agree with Judge Vena that Knight's duties were not a matter of "common sense," and that a jury could not determine those obligations without the assistance of an expert. Nowacki, 279 N.J. Super. at 292. Of the expert reports that plaintiff produced in the summary judgment motion record, plaintiff does not contend that Valentine and Dr. Berlin offered opinions pertaining to a rehabilitation assistant's standard of care during a transfer of a disabled patient.

IV.

As we have concluded the court correctly dismissed the matter based on plaintiff's failure to support her negligence claim with the necessary expert opinion, we need not consider whether Knight's alleged intentional conduct was outside the scope of her employment and precluded defendants' vicarious liability. See Carter v. Reynolds, 175 N.J. 402, 408-09 (2003) (noting the purpose of holding employers vicariously liable for the torts of their employees is that "one who expects to derive a benefit or advantage from an act performed on his behalf by another must answer for any injury that a third person may

A-1794-19

sustain from it").   To the extent we have not addressed any of plaintiff's remaining arguments, it is because we have determined that they are without sufficient merit to warrant discussion in this opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1794-19