**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4890-16T1

PHILADELPHIA CONTRIBUTIONSHIP
INSURANCE COMPANY, a/s/o
DAVID MUNZ,

     Plaintiff-Appellant,

v.

RYAN, INC.,

     Defendant-Respondent.

_____

Submitted September 13, 2018 – Decided January 9, 2019

Before Judges Simonelli and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Union County, Docket No. L-2449-15.

Crawford and McElhatton, attorneys for appellant (Brian J. James, and on the brief).

Hardin, Kundla, McKeon & Poletto, PA, attorneys for respondent (Janet L. Poletto and Robert E. Blanton, Jr., on the brief).

PER CURIAM

In this insurance subrogation matter, plaintiff Philadelphia Contributionship Insurance Company appeals from the April 13, 2017 Law Division order barring its experts' reports and testimony and granting summary judgment to defendant Ryan, Inc. Plaintiff also appeals from the June 9, 2017 order denying its motion for reconsideration. We affirm.

                                    I.

Defendant is a fuel oil company that provided fuel for the oil-fired furnace located in the home of David Munz. Defendant also serviced the furnace for many years. Approximately one month before December 16, 2013, and again on that date, defendant's service technician, Anthony Perriello, serviced the furnace after Munz reported having no heat.

On January 4, 2014, a fire occurred at Munz's home, which originated inside the furnace. Munz submitted a property damage claim to plaintiff, which plaintiff paid. On July 6, 2015, plaintiff filed a complaint for subrogation against defendant to recover the sum paid to Munz.

The discovery deadline was July 21, 2016. On May 20, 2016, the parties consented to a sixty-day extension. On August 30, 2016, defendant filed a motion to further extend discovery and fix a date certain for plaintiff to furnish

expert reports.  In a September 16, 2016 order, the trial court extended discovery to November 18, 2016, and ordered as follows, in pertinent part:

> Plaintiff shall furnish all written reports or written summaries of oral reports from all proposed expert witnesses on liability, causation, and/or damages by September 26, 2016[;]
>
> The testimony of the experts for [p]laintiff whose written reports are supplied by September 26, 2016 shall be specifically limited to the scope of the reports[;] and
>
> The testimony of any expert witnesses on behalf of [p]laintiff whose reports are not supplied by September 26, 2016 shall be barred at the time of trial.

Plaintiff did not seek relief from this order and does not challenge it on appeal.

On September 26, 2016, plaintiff amended its interrogatory answers to include the following written summary of the oral reports of its proposed origin and cause expert, John Goetz, and furnace expert, Edward Carey:

> John Goetz – Origin and Cause Expert
>
> [] Goetz conducted an inspection of [Munz's] property . . .  to determine the origin and cause of the fire at the subject property.  No exterior fire or smoke damage was observed.  An interior examination disclosed smoke and heavy soot damage throughout the first and second floor.  The soot damage was observed to be coming from the hot air ducts for the oil fired furnace located in the basement.  The basement was observed to have sustained smoke, soot, fire and water

A-4890-16T1

damage. Fire damage was observed in the area of the oil-fired, hot air furnace.

Fire patterns observed in the structure place the area of origin as the oil-fired, hot air furnace. Above the furnace was the duct system for the furnace as well as some electrical lines. These electrical lines sustained no damage, and no malfunctions were observed. The duct system contained large amounts of soot.

An examination of the oil-fired, hot air furnace was conducted. The furnace sustained fire and heat damage. The fire and heat damage was observed mainly in the burner area of the furnace. Various components of the furnace had been removed and placed on top of the furnace. There was large amount of soot in the flue for the chimney. The burner section of the furnace displayed heavy heat damage. From the fire patterns observed on the furnace, the furnace is the point of origin of the fire. The only fire damage observed within the basement was within the oil-fired, hot air furnace.

Ed Carey – Furnace Expert

[] Carey conducted an evidence examination of the oil-fired, hot air furnace. The furnace is a Thatcher [TM] Low Boy designed furnace, Model No. V120G, Series I which was approximately [forty-six] years old. The furnace sustained a fuel release in the burden vestibule (front) of the furnace, which fire and burn patterns indicate resulted in a hostile fire in the burner vestibule.

The chimney connector pipe is the pipe from the breach/outlet of the furnace to the chimney. It is presumed that the chimney connector pipe was

4

removed from the furnace by the fire department personnel's fire suppression efforts.

Examination of the chimney pipe disclosed heavily corroded holes through the chimney connector pipe that would have been visible by any professional working on the subject furnace. Further inspection of the subject furnace revealed that the oil furnace also had large holes corroded through the metal surfaces of the heat exchanger. The extent and condition of the corrosion of the metal surfaces of the chimney connector pipe and heat exchanger indicate that said condition was not the result of the events of the subject fire. Rather, the holes corroded through the chimney connector pipe and heat exchanger were obviously preexisting, prior to the services performed by defendant, within a few weeks of the fire.

The subject furnace is long past its useful life expectancy. Also, it clearly appears that the subject oil furnace, chimney pipe and heat exchanger would not have been in safe and serviceable condition when the services were performed by defendant, within a few weeks of the fire.

The subject furnace should not have been repaired and returned to service when defendant worked on said furnace a few weeks prior to the incident. At that time, the subject furnace should have been declared unsafe and removed from service by the defendant's service personnel.

The court entered two more orders extending the discovery deadline for the parties to complete specified discovery, which did not include serving supplemental or rebuttal expert reports. On January 10, 2017, plaintiff filed a

motion to extend discovery for thirty days to serve rebuttal expert reports and complete specific depositions, including Perriello's deposition. Perriello's deposition occurred on January 19, 2017. Thereafter, in a February 3, 2017 order, the court extended discovery for thirty days, to March 6, 2017,[1] for the parties to complete the specified deposition and denied plaintiff's request to serve rebuttal expert reports. The court also scheduled trial for May 15, 2017. Plaintiff did not seek relief from this order and does not challenge it on appeal.

Without leave of court, on March 1, 2017, plaintiff amended its answers to interrogatories to include a supplemental expert report from Carey that gave an entirely new opinion as to the cause of the fire. Defendant objected to the supplemental report and reserved the right to contest it.

On March 15, 2017, defendant filed a motion to bar Goetz's and Carey's reports and testimony and for summary judgment dismissing the complaint for plaintiff's lack of expert evidence establishing defendant's liability. Defendant argued that Carey's supplemental report was untimely and served in violation of the court's orders, and Goetz and Carey rendered net opinions that failed to articulate the cause of the fire.

---

[1] March 4, 2017 was a Saturday. See R. 1:3-1.

A-4890-16T1

Plaintiff countered that the court should allow Carey's supplemental report because Perriello's deposition testimony provided newly discovered evidence as to the cause of the fire. Plaintiff claimed this new evidence was not readily available or discoverable prior to the deposition, but did not explain why.

On April 13, 2017, the court entered an order barring Goetz's and Carey's reports and testimony and granting summary judgment dismissing the complaint. In an oral opinion, the court found the case required expert testimony establishing the origin and cause of the fire and whether defendant was negligent. The court then reviewed the written summary of Goetz's report and found that other than saying the fire originated in the furnace, Goetz did not establish the cause of the fire or give the whys and wherefores supporting plaintiff's claim that defendant's actions caused the fire. The court concluded that Goetz rendered an inadmissible net opinion and barred his report and testimony.

The court reviewed the written summary of Carey's report and found that although Carey concluded the furnace, chimney pipe and heat exchanger would not have been in a safe and serviceable condition when Perriello serviced the furnace, he failed "to reference any textbook treatise, standard custom

7

recognized practice or anything of the like other than his personal view" to support his opinion. The court also stated that Carey

> talk[ed] about the chimney pipe and the holes in the system and things like that. And having done that, he [did not] say at all why − provide any foundation other than his own training and experience as to why − that those were the problems and not let the [furnace] continue to be [in] serviceable condition and continue to be operated. So there is no, I find, explanatory analysis provided.

The court determined that Carey's supplemental report was barred by court orders. Nevertheless, the court found that "the same is true of [the supplemental report]. . . . At no time is there any reference to anything other than [Carey's] own personal viewpoint." The court concluded that Carey rendered inadmissible net opinions and barred his reports and testimony. Due to the lack of expert evidence, the court granted summary judgment and dismissed the complaint.

Plaintiff filed a motion for reconsideration, reiterating that the court should allow Carey's supplemental report based on newly discovered evidence from Perriello's deposition testimony that was not readily available or discoverable prior to the deposition, but again did not explain why. In the alternative, plaintiff argued for the first time that expert testimony was not necessary.

A-4890-16T1

Defendant countered that the September 16, 2016 order required plaintiff to serve all expert reports or written summaries by September 26, 2016, and the order limited the testimony of plaintiff's experts to the scope of the reports furnished and barred any expert reports not timely served. Defendant also argued that the February 3, 2017 order barred plaintiff from submitting further expert reports; expert testimony was necessary to prove the cause of the fire; and Goetz and Carey rendered net opinions as to the cause of the fire. Defendant further argued that Perriello's deposition testimony was not newly discovered evidence that was not readily available or discoverable prior to the deposition because plaintiff could have deposed Perriello prior to submitting the written summaries of Goetz's and Carey's oral expert reports.

On June 9, 2017, the court entered an order denying the motion, finding plaintiff did not satisfy the requirements for granting reconsideration. In an oral opinion, the court again found the case required expert testimony, reasoning as follows:

> This is not a case that's so plain on its facts that it would not be beyond the ken of an average juror as to the operation of the [furnace], the way the [furnace] should be maintained, and how if there were a failure to maintain the [furnace] correctly specifically that that would lead to the fire in question. It would absolutely cause a jury to speculate. So it is the plaintiff's burden to prove negligence in this matter.

A-4890-16T1

The court also concluded that Goetz and Carey rendered inadmissible net opinions for the reasons the court expressed in granting defendant's motion to bar Goetz's and Carey's reports and testimony and for summary judgment.

II.

On appeal, plaintiff argues that Carey's expert opinions are admissible because they satisfy the foundational requirements for the admission of expert testimony. Plaintiff also reiterates that the court should have allowed Carey's supplemental report because it was based on newly discovered evidence from Perriello's deposition testimony.[2]

We first address the barring of Carey's supplemental report. Rule 4:17-4(a) provides, in pertinent part: "If the interrogatory requests the name of an expert . . . of the answering party or a copy of the expert's . . . report, the party shall comply with the requirements of [Rule 4:17-4(e)]." Rule 4:17-4(e) provides, in pertinent part:

_____

[2] Plaintiff did not specifically address the barring of Goetz's expert report and testimony. Thus, the issued is deemed waived. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2019). In any event, we agree with the court that Goetz rendered an inadmissible net opinion. Goetz failed to opine as to where, how, and why the fire started in the furnace and that defendant's actions caused the fire.

If an interrogatory requires a copy of the report of an expert witness . . . as set forth in [Rule] 4:10-2(d)(1), the answering party shall annex to the interrogatory an exact copy of the entire report or reports rendered by the expert . . . . The report shall contain a complete statement of that person's opinions and the basis therefor; the facts and data considered in forming the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; and whether compensation has been or is to be paid for the report and testimony and, if so, the terms of the compensation. If the answer to an interrogatory requesting the name and report of the party's expert . . . indicates that the same will be supplied thereafter, the propounder may, on notice, move for an order of the court fixing a day certain for the furnishing of that information by the answering party. Such order may further provide that an expert . . . whose name or report is not so furnished shall not be permitted to testify at trial.

"The first two sentences of [Rule 4:17-4(e)] define the answering party's obligation with respect to furnishing the full reports received by him and all supplementary reports." Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 4:17-4(e) (2019).

Rule 4:17-7 provides, in pertinent part:

Except as otherwise provided by [Rule] 4:17-4(e), if a party who has furnished answers to interrogatories thereafter obtains information that renders such answers incomplete or inaccurate, amended answers shall be served not later than [twenty] days prior to the end of the discovery period, as fixed by the track assignment or subsequent order. Amendments may be

11

allowed thereafter only if the party seeking to amend certifies therein that the information requiring the amendment was not reasonably available or discoverable by the exercise of due diligence prior to the discovery end date. In the absence of said certification, the late amendment shall be disregarded by the court and adverse parties.

Here, defendant filed a motion for an order fixing a date certain for the furnishing of plaintiff's expert reports. The September 16, 2016 order set September 26, 2016 as the deadline for plaintiff the furnish "all written expert reports or written summaries of oral reports from all proposed expert witnesses on liability, causation, and/or damages." (Emphasis added). The order also specifically limited the testimony of plaintiff's experts whose reports were timely furnished to the scope of the reports furnished, and barred the testimony of any expert whose report was not timely furnished. In addition, the February 3, 2017 order barred plaintiff from serving further expert reports.

Plaintiff's late service of Carey's supplemental report violated the September 16, 2016 order not only as to time, but also as to content. Plaintiff served the supplemental report well after the September 26, 2016 deadline, and Carey asserted a completely new theory of liability that went beyond the scope of the written summary of his oral report. The supplemental report also violated

A-4890-16T1

the February 3, 2017 order, which denied plaintiff leave to serve further expert reports.

In addition, the court had extended discovery to March 6, 2017, but not for the purpose of allowing plaintiff to amend its answers to interrogatories to include supplemental expert reports. Nonetheless, on March 1, 2017, less than twenty days prior to the discovery deadline, plaintiff amended its interrogatory answers to include Carey's supplemental expert. Plaintiff claimed that Perriello's deposition testimony provided newly discovered evidence that was not reasonably available or discoverable by the exercise of due diligence prior to the discovery deadline, but gave no explanation whatsoever as to why Perriello was not deposed prior to the submission of the written summary. For all of these reasons, Carey's supplemental report and testimony based thereon were properly barred.

We next address whether the court properly barred Carey's initial expert report and testimony based thereon. A trial court's evidentiary rulings, including those regarding expert testimony, are "entitled to deference absent a showing of an abuse of discretion[.]" State v. Brown, 170 N.J. 138, 147 (2001) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)); see also Townsend v. Pierre, 221 N.J. 36, 53 (2015); Bender v. Adelson, 187 N.J. 411, 428 (2006). "[An] abuse

13

of discretion only arises on demonstration of 'manifest error or injustice[,]'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the trial judge's "decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)). We discern no abuse of discretion here.

Generally, the admission of expert testimony is governed by N.J.R.E. 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Admissibility turns on three basic requirements:

> (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.
>
> [Agha v. Feiner, 198 N.J. 50, 62 (2009) (quoting State v. Kelly, 97 N.J. 178, 208 (1984)).]

A-4890-16T1

N.J.R.E. 703 addresses the foundation for expert testimony. The rule mandates that expert opinion be grounded in "facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts in forming opinions on the same subject." Polzo v. Cty. of Essex, 196 N.J. 569, 583 (2008) (quoting State v. Townsend, 186 N.J. 473, 494 (2006)).

The net opinion rule is a "corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Ibid. (alteration in original). The rule requires that an expert "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011)); see also Buckelew v. Grossbard, 87 N.J. 512, 524 (1981) (explaining that "an expert's bare conclusion[], unsupported by factual evidence, is inadmissible").

The net opinion does not mandate an expert organize or support an opinion in a particular manner that opposing counsel deems preferable. Pierre, 221 N.J. at 54. An expert's proposed testimony should not be excluded merely "because

15

it fails to account for some particular condition or fact which the adversary considers relevant." Creanga v. Jardal, 185 N.J. 345, 360 (2005) (quoting State v. Freeman, 223 N.J. Super. 92, 116 (App. Div. 1988)).

The net opinion rule, however, mandates that experts "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable." Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992). An expert's conclusion "is excluded if it is based merely on unfounded speculation and unquantified possibilities." Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997) (quoting Vuocolo v. Diamond Shamrock Chem. Co., 240 N.J. Super. 289, 300 (App. Div. 1990)). By definition, unsubstantiated expert testimony cannot provide to the factfinder the benefit that N.J.R.E. 702 envisions: a qualified specialist's reliable analysis of an issue "beyond the ken of the average juror." Polzo, 196 N.J. at 582; see N.J.R.E. 702. Given the weight that a jury may accord to expert testimony, a trial court must ensure that an expert is not permitted to express speculative opinions or personal views that are unfounded in the record. Pierre, 221 N.J. at 55.

Applying these standards, we conclude the court correctly determined that Carey rendered an inadmissible net opinion. Carey's opinion is completely

A-4890-16T1

lacking in the "why[s ]and wherefore[s,]" of the cause of the fire, <u>Pomerantz Paper Corp.</u>, 207 N.J. at 372, and he did not explain the methodology for his opinions. <u>Landrigan</u>, 127 N.J. at 417. The written summary of Carey's oral report stated that the furnace was not in a serviceable condition when defendant serviced it. However, as the court found, Carey did not reference any textbook, treatise, standard custom, or recognized practice other than his personal view, and provided no explanatory analysis whatsoever. Thus, it cannot be said that anything in Carey's report constituted "specialized knowledge [that] will assist the trier of fact." N.J.R.E. 702. Most importantly, as the court noted on reconsideration, "while [] Carey may be able to establish that someone had a duty that was breached which caused the fire, because the report of [Goetz was] excluded, there's nothing to definitely tie defendant to being the cause beyond mere speculation."

Given our standard of review, we conclude the court properly barred Carey's expert report and testimony, as he failed to meet the threshold requirements necessary to surpass a net opinion.

A-4890-16T1

III.

Plaintiff argues that this case does not require expert testimony because jurors of common knowledge can form a valid conclusion on the standard of care. We disagree.

"In most negligence cases, the plaintiff is not required to establish the applicable standard of care." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014). In the majority of negligence cases, "[i]t is sufficient for [the] plaintiff to show what the defendant did and what the circumstances were. The applicable standard of conduct is then supplied by the jury[,] which is competent to determine what precautions a reasonably prudent man in the position of the defendant would have taken." Id. at 406-07 (alterations in original) (quoting Sanzari v. Rosenfeld, 34 N.J. 128, 134 (1961)). In cases that do not require expert testimony, the facts are such that "a layperson's common knowledge is sufficient to permit a jury to find that the duty of care has been breached without the aid of an expert's opinion." Id. at 407 (quoting Giantonnio v. Taccard, 291 N.J. Super. 31, 43 (App. Div. 1996)).

However, in some instances, "the 'jury is not competent to supply the standard by which to measure the defendant's conduct,' and the plaintiff must instead 'establish the requisite standard of care and [the defendant's] deviation

18

from that standard' by 'present[ing] reliable expert testimony on the subject[.]" Ibid. (first and second alteration in original) (citations omitted).  To determine whether expert testimony is required, a court should consider "whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the [defendant] was reasonable."  Ibid. (alteration in original) (quoting Butler v. Acme Mkts, Inc., 89 N.J. 270, 283 (1982)).

The common knowledge doctrine applies in circumstances "where 'jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts.'"  Hubbard v. Reed, 168 N.J. 387, 394 (2001) (quoting Estate of Chin v. Saint Barnabas Med. Ctr., 160 N.J. 454, 469 (1999)), superseded by Affidavit of Merit statutory amendment, L. 2001, c. 372, § 1, N.J.S.A. 2A:53A-26 to -29, as recognized in Meehan v. Antonellis, 226 N.J. 216, 228 (2016).  "The most appropriate application of the common knowledge doctrine involves situations where the carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience."  Rosenberg v. Cahill, 99 N.J. 318, 325 (1985).

A-4890-16T1

This case is not a common knowledge case. It is the type of case where evidence of defendant's negligence is not so readily apparent as to justify use of the common knowledge exception. Rather, this case involves specialized technical knowledge that is necessary to provide the jury with the applicable standard of care for the maintenance and servicing of a specific type of oil-fired furnace. An average juror would lack the "'requisite special knowledge, technical training and background' to make those determinations without an expert's assistance." Lucia v. Monmouth Med. Ctr., 341 N.J. Super. 95, 103 (App. Div. 2001) (quoting Kelly v. Berlin, 300 N.J. Super. 256, 264 (App. Div. 1997)).

The cases plaintiff cites to support the common knowledge exception do not apply, as none of them concern the standards of care and proximate cause in matters involving technical machinery or investigations of the origin and cause of a furnace fire. For example, Sommers v. McKinney, 287 N.J. Super. 1 (App. Div. 1996) involved a legal malpractice claim where a juror of common knowledge could determine without expert testimony whether the failure to file a brief and advise the client of settlement discussions constituted attorney negligence. Id. at 12. The case here involves specialized technical knowledge of the maintenance and service of a furnace.

A-4890-16T1

Rosenberg is contrary to plaintiff's position, and actually supports defendant's position and the court's opinion. In Rosenberg, the Court determined "that the common knowledge doctrine was not available . . . and [did] not obviate the need for competent expert testimony to establish the applicable duty of care with respect to the proper chiropractic practices" in the reading of x-rays. 99 N.J. at 327. Similarly, here, competent expert testimony is necessary to establish the applicable standard of care with respect to the maintenance and service of the furnace.

In Klimko v. Rose, 84 N.J. 496 (1980), the Court held that although expert testimony was required to determine causation, expert testimony was not required to establish the standard of care applicable to a chiropractor and whether the chiropractor breached that standard of care. Id. at 505-06. The Court reasoned that a layperson could determine whether the chiropractor acted within his standard of care by continuing to apply pressure to the patient's neck where the patient had already once lost consciousness. Ibid. In contrast, the case here is not a case where the standard of care is readily apparent to a layperson.

In Butler v. Acme Markets, Inc., 89 N.J. 270, 274-75, 283-84 (1982), the Court held that the lack of expert testimony was "not fatal" for the jury to decide

whether the defendant was negligent and breached its duty of care to its customers regarding a robbery that occurred in the defendant's parking lot by failing to post and having one guard remain inside of the store in a known high crime area. In <u>Butler</u>, unlike here, no specialized skill or knowledge was required for a jury to determine whether the lack of signs or heightened security in a high crime area meant the defendant was negligent.

Finally, in <u>Black v. Pub. Serv. Elec. & Gas Co.</u>, 56 N.J. 63, 68, 78-79 (1970), the defendant's maintenance of a high voltage wire allegedly caused the decedent's electrocution. The Court held that expert testimony was not necessary for the jury to decide whether the duty to exercise care commensurate with the risk involved was satisfied when the defendant failed to post warning signs on or near the poles or on the wires. Unlike here, no specialized skill or knowledge was necessary to determine whether or not warning signs were appropriate.

The more applicable case is <u>Davis</u>, where the Court held that "the inspection of fire sprinklers by qualified contractors . . . 'constitutes a complex process involving assessment of a myriad of factors' that 'is beyond the ken of the average juror.'" 219 N.J. at 408 (quoting <u>Giantonnio</u>, 291 N.J. Super. at 44). Such is the case here. Expert testimony as to the cause of the fire requires

22

technical knowledge of proper maintenance and servicing of a furnace that is beyond the ken of an average juror.

## IV.

Plaintiff argues the court erred in granting summary judgment because there was enough circumstantial evidence to overcome summary judgment. We have considered this argument in light of the record and applicable legal principles and conclude it is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Expert evidence was necessary in this case. Because plaintiff lacked expert evidence, summary judgment was properly granted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4890-16T1