**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0835-24

DERRICK HINSON,

    Plaintiff-Appellant,

v.

SHOPRITE OF EAST ORANGE,

    Defendant-Respondent,

and

VILLAGE SUPERMARKET
OF NJ, LP,[1]

    Defendant/Third-Party
    Plaintiff-Respondent,

v.

STERLING SECURITY,

    Third-Party Defendant-
    Respondent.

_____

Submitted March 17, 2026 – Decided April 14, 2026

---

[1] Improperly pled as Shoprite of East Orange.

Before Judges Chase and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-1634-17.

Hinson Snipes, LLP, attorneys for appellant (Tracey C. Hinson, on the briefs).

Carey & Grossi PC, attorneys for respondent Village Supermarket of NJ, LP (Charles B. Carey, on the brief).

PER CURIAM

Plaintiff Derrick Hinson appeals four Law Division orders: (1) the April 26, 2019 order denying plaintiff's motion to reopen and extend discovery; (2) the June 21, 2019 order denying reconsideration of his motion to reopen discovery; (3) the June 21, 2019 order granting summary judgment to defendant ShopRite of East Orange; and (4) the October 24, 2024 order entering a directed verdict to ShopRite's contracted security company, defendant Sterling Securities.[2] Although we affirm the orders denying reopening discovery and reconsideration, as well as granting summary judgment to ShopRite, we vacate the entry of the directed verdict to Sterling Securities, and remand for a new trial in accordance with this decision.

I.

---

[2] Sterling Securities has not filed a brief in this matter.

A-0835-24

On March 8, 2015, plaintiff, his former fiancée, Gasafa Jean Charles, and their two young children went to the ShopRite supermarket to buy groceries. As plaintiff and his family stood at the checkout line at register nine, the cashier at register ten, Terry McCoy, asked plaintiff what was on his hat, to which plaintiff responded, "none of [your] business." After McCoy asked him again what was on his hat and to tilt his hat, plaintiff replied, "I'm a grown man. I don't have to tilt my []head for anybody." Plaintiff testified at trial that McCoy, who is African American like him, became angry and began to curse at him stating, "I'll f[**]k this n[****]r up."

As plaintiff and his family continued to check out their groceries, plaintiff stepped into the aisle and McCoy left his register and walked around the other checkout counters towards plaintiff. Plaintiff testified he looked towards the exit for a second and saw a Sterling officer standing by the exit door who looked at him right before McCoy left his register.

As McCoy was walking around the counters, plaintiff took off his jacket, rolled up his sleeves, and got into a boxing position, preparing to fight. When McCoy arrived where plaintiff was standing, the two engaged in a mutual fight. One of the three Sterling guards working—but not the one who was alleged to have made eye contact with plaintiff—Lydel Dorsey, testified that he was standing nearby, and although he did not hear the verbal altercation take place,

3

he realized an incident might occur when he saw plaintiff take his jacket off and roll his sleeves up. At this point, Dorsey followed McCoy as he approached plaintiff and radioed for backup security.

It took Dorsey five seconds to intervene in the fight. As Dorsey was trying to break up the fight, the parties fell to the floor, with plaintiff on top. When Dorsey pulled plaintiff up, McCoy took the opportunity to strike plaintiff. The altercation ended with McCoy being pushed away and leaving through the front door and plaintiff being taken back to an office. McCoy was subsequently terminated for violating company policy by physically assaulting plaintiff. The entire incident was captured on two video cameras.

Gary Bootes, one of Sterling's owners, testified that they have over 300 employees and provide security services to schools, malls, drug stores, and supermarkets. He testified that his guards are supposed to follow certain procedures or rules when performing their jobs and that if they hear a cashier threatening a customer, they should intervene. Further, if they see a person threatening a customer, and then approaching that customer, they should also intervene.

Plaintiff filed a complaint against ShopRite in March 2017, alleging vicarious liability, negligent supervision, and breach of its duty to maintain safe premises. ShopRite answered and later filed a third-party complaint against

 A-0835-24

Sterling Securities. At the end of April 2018, plaintiff sought, and the court granted, permission to amend his complaint to add Sterling.

The initial discovery end date was in February 2018. Discovery was extended on four occasions: pursuant to Rule 1: 24-1(c), the discovery end date was extended an additional sixty days until April 2018; from April 2018 to July 2018, upon motion by defendant ShopRite; and from July 2018 to November 2018, with the joinder of Sterling as a new party pursuant to Rule 4:24-1(b). At the end of December 2018, the court entered an order extending discovery an additional ninety days to the end of March 2019 upon Sterling Securities' motion to extend discovery.

In April 2019, after discovery ended, plaintiff moved to reopen and extend discovery. The court denied this motion finding no exceptional circumstances warranting another extension. The court noted the parties had over 700 days of discovery; there had been four discovery extensions; and plaintiff did not file any motions to compel discovery of the items he claimed he was still waiting for. On June 21, plaintiff's motion for reconsideration of this order was denied.

Almost a month after discovery ended, the court rescheduled an arbitration date that was previously scheduled before discovery ended. Four days before arbitration, ShopRite moved for summary judgment. On June 21, 2019, after oral argument, the court granted ShopRite's motion determining that

A-0835-24

plaintiff failed to show any evidence of negligent hiring and that ShopRite could not be held vicariously liable for an employee's altercation with plaintiff since McCoy's actions were clearly outside of his scope of employment.

Sterling then moved for summary judgment arguing that plaintiff failed to serve an expert report, and thus, could not prevail on his negligence claim. The court denied Sterling's motion, noting the standard of review was the reasonable person standard and the jury did not need an expert, rather, they could use their common knowledge to make the determination of whether the guards lack of involvement until the fight was underway was negligent.

The claims against Sterling proceeded to trial. After the close of plaintiff's case, Sterling moved for a directed verdict, arguing that plaintiff did not present required expert testimony to establish a standard of care regarding negligent security conduct. The trial court granted Sterling's motion and dismissed plaintiff's claims with prejudice finding that an expert was required to opine whether Sterling's guards intervened and de-escalated in a timely manner and that the jury was unable to determine how quickly the guard should have intervened by looking at the video.

This appeal follows.

A-0835-24

II.

A.

We first consider plaintiff's argument that the court erred when it denied his motion to reopen and extend discovery. We disagree.

We review a decision denying a motion to reopen or extend discovery for an abuse of discretion. Leitner v. Toms River Reg'l Schs., 392 N.J. Super. 80, 87 (App. Div. 2007). "That is, '[w]e generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law.'" Pomerantz Paper Co. v. New Cmty. Corp., 207 N.J. 344, 371 (2011) (quoting Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005) (alteration in original)).

Rule 4:24-1(c) requires a showing of "good cause" to support an application to extend the time for discovery that is heard before the time for discovery has expired. A more substantial showing, "exceptional circumstances," is required to justify an extension once the discovery time has expired and an arbitration or trial date is fixed. See R. 4:24-1(c); Hollywood Café Diner v. Jaffee, 473 N.J. Super 210, 219-20 (App. Div. 2022).

> In order to extend discovery based upon "exceptional circumstances," the moving party must satisfy four inquiries: (1) why discovery has not been completed

A-0835-24

within time and counsel's diligence in pursuing discovery during that time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's failure to request an extension of the time for discovery within the original time period; and (4) the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time.

[Rivers, 378 N.J. Super. at 79 (citing Vitti v. Brown, 359 N.J. Super. 40, 51 (Law Div. 2003)).]

"Any attorney requesting additional time for discovery should establish that they made effective use of the time permitted under the rules." Ibid. "A failure to pursue discovery promptly, within the time permitted, would normally be fatal to such a request." Ibid. (citing Vitti, 359 N.J. Super. at 51). "[W]here the 'delay rests squarely on plaintiff's counsel's failure to retain an expert and pursue discovery in a timely manner,' and the [above] factors are not present there are no exceptional circumstances to warrant an extension." Bldg. Materials Corp. v. Allstate Ins. Co., 424 N.J. Super. 448, 479 (App. Div. 2012) (quoting Rivers, 378 N.J. Super. at 79). The moving party must provide "[a] precise explanation that details the cause of delay and what actions were taken during the elapsed time." Bender v. Adelson, 187 N.J. 411, 429 (2006).

Measured against this standard, we discern no abuse of discretion in the court's determination. The record supports the court's finding that plaintiff failed to establish exceptional circumstances warranting the requested discovery

extension, which was scheduled after discovery had ended and an arbitration date had been set. See R. 4:24-1(c). Plaintiff's argument that the original scheduled arbitration date occurred before discovery was completed does not change this analysis because the rescheduled arbitration date occurred after discovery was completed. Moreover, plaintiff did not demonstrate why, through the exercise of due diligence, he could not complete discovery within the time period allotted. As the motion court acknowledged, discovery remained open for more than 700 days and was extended numerous times. Plaintiff served initial discovery requests and pursued initial discovery, but he never followed through with a formal motion to compel their production. Although plaintiff speculated such documents might contain relevant information, the court did not abuse its discretion in denying plaintiff's request.

B.

We also reject plaintiff's contention that the court should have granted his motion for reconsideration of its denial to reopen discovery. Reconsideration is a matter within the sound discretion of the court. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). "It is not appropriate merely because a litigant is dissatisfied with a prior ruling or wishes to reargue a motion[.]" Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010). Instead, reconsideration should be limited to those cases "in which either 1) the [c]ourt has expressed its

decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

Plaintiff did not identify any controlling authority or material evidence that the court overlooked. Instead, he repeated the same arguments advanced at the original motion, including speculation about personnel or security documents that he never sought to compel during the lengthy discovery period. Because plaintiff offered no new facts, no change in the law, and no showing that the court misapprehended the record; denial of reconsideration was within the trial court's discretion. See Palombi, 414 N.J. Super. at 288.

C.

We next address plaintiff's claim that there were material facts in dispute precluding the court from granting summary judgment. We are not persuaded.

We review a grant of summary judgment de novo, applying the same standard as the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Summary judgment is proper if the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law." Burnett v. Gloucester Cnty. Bd. of Chosen Freeholders, 409 N.J. Super. 219, 228 (App. Div. 2009) (quoting R. 4:46-2(c)). Issues of law are

10

subject to the de novo standard of review, and the trial court's determination of such issues is accorded no deference.  Meade v. Twp. of Livingston, 249 N.J. 310, 326-27 (2021); Kaye v. Rosefielde, 223 N.J. 218, 229 (2015).

"To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'"  Friedman v. Martinez, 242 N.J. 450, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).  "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  Rios v. Meda Pharm., Inc., 247 N.J. 8, 13 (2021) (quoting Brill, 142 N.J. at 540).

Accordingly, this standard requires the court to conduct its analysis in light of the elements and evidentiary standard governing the cause of action. Bhagat v. Bhagat, 217 N.J. 22, 38 (2014).  To establish a prima facie case of negligence, plaintiff must show:  (1) a duty of care; (2) a breach of that duty; (3) actual and proximate causation; and (4) damages.  Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013).

Plaintiff stresses that where credibility is at issue, summary judgment is inappropriate.  In re Estate of DeFrank, 433 N.J. Super. 258, 266 (App. Div. 2013).  He contends there are disputed issues of material facts as to whether ShopRite was vicariously liable for the conduct of its employee, McCoy;

11

whether McCoy was acting within the scope of his employment; whether ShopRite was negligent in the hiring, training, or supervising McCoy; and whether ShopRite was negligent in hiring Sterling Securities to protect its premises and customers.

Those assertions are unavailing. "The imposition of vicarious liability upon employers for the acts of an employee, also known as the doctrine of respondeat superior, is based upon the idea that the employee is the agent . . . of the employer." G.A.-H. v. K.G.G., 238 N.J. 401, 415 (2019). "Under respondeat superior, an employer can be found liable for the negligence of an employee causing injuries to third parties, if, at the time of the occurrence, the employee was acting within the scope of his or her employment." Carter v. Reynolds, 175 N.J. 402, 408-09 (2003) (citing Lehmann v, Toys 'R' Us, Inc., 132 N.J. 587, 619 (1993)).

Courts consider four factors in determining whether an employee acted within the scope of employment. Davis v. Devereux Found., 209 N.J. 269, 303 (2012). An employee's action is considered to be within the scope of employment if: (1) "it is of the kind he is employed to perform"; (2) "it occurs substantially within the authorized time and space limits"; (3) "it is actuated, at least in part, by a purpose to serve the [employer]"; and (4) "if force is intentionally used by the [employee] against another, the use of the force is not

unexpected by the [employer]." Ibid. (quoting Restatement (Second) of Agency, § 228 (Am. Law Inst. 1958)).

"Conversely, an employee's act is outside of the scope of his or her employment 'if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.'" Davis, 209 N.J. at 303 (quoting Restatement (Second) § 228(2)). Rarely will intentional torts fall within the scope of employment. Ibid. (citing Schultz v. Roman Catholic Archdiocese of Newark, 95 N.J. 530, 535 n.1 (1984)).

McCoy was not acting within the scope of his employment with ShopRite when he engaged in a physical altercation with plaintiff. First, McCoy's altercation with plaintiff was in no way related to the kind of action that he was employed to perform—to check out customers' groceries at the grocery store. Davis, 209 N.J. at 303. Although this altercation did occur during work time and on the grocery store premises, this factor is not dispositive of whether this altercation was within the scope of plaintiff's employment. Ibid. To the contrary, the altercation between McCoy and plaintiff was purely personal: McCoy asked plaintiff what was on his hat, and when plaintiff refused to tell him twice, the verbal altercation escalated to physical violence. Thus, this was not an altercation over McCoy's job responsibilities.

A-0835-24

McCoy's physical altercation with plaintiff was not furthering ShopRite's purpose of selling groceries. McCoy was not cashing plaintiff out. Rather, this altercation was likely to drive business away from ShopRite, as customers may have been dissuaded from shopping at this ShopRite after witnessing an employee fight a customer. Finally, ShopRite did not expect that a cashier would risk their job to physically fight a customer in the store, as McCoy chose to do, causing him to lose his job.

Plaintiff also failed to show ShopRite negligently hired, retained, or supervised McCoy. "[T]he tort of negligent hiring has as its constituent elements two fundamental requirements." Di Cosala v. Kay, 91 N.J. 159, 173 (1982). "The first involves the knowledge of the employer and foreseeability of harm to third persons." Ibid. Regardless of whether the employee was acting within the scope of employment, "[a]n employer will only be held responsible for the torts of its employees . . . where it knew or [should have known] of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other[s]." Ibid. (alterations in original) (internal citations omitted). "The second required showing is that, through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury." Id. at 174.

14

"[T]he duty owed by [a] negligent employer [is not] limited to situations within the scope of the employment of [its] employees." Ibid. Rather, "the duty owed is properly to be determined by whether the risk of harm from the dangerous employee to . . . the plaintiff was reasonably foreseeable as a result of the employment." Ibid. "Thus, the issue of duty owed to a plaintiff is a question of foreseeability." Id. at 175.

Plaintiff did not provide a scintilla of evidence to show that ShopRite was negligent in hiring, retaining, or supervising McCoy. After five extensions, two years, and over 700 days of discovery, plaintiff never filed a motion to compel any documents relating to their negligent hiring claim. Thus, the court was correct in granting ShopRite's summary judgment motion because all that plaintiff had to support this claim is the fact that there was an absence of documentation. The absence of documentation cannot be considered to prove a prima facie case of negligent hiring, retention, or supervision.

Plaintiff also failed to show that ShopRite violated a non-delegable duty to him. "[A]n owner of a building has a non-delegable duty to exercise reasonable care for the safety of tenants and persons using the premises at his invitation." De Los Santos v. Saddlehill, Inc., 211 N.J. Super. 253, 261 (App. Div. 1986) (citing Mayer v. Fairlawn Jewish Center, 38 N.J. 549, 555 (1962)). However, in such cases, "[f]oreseeability of the risk that criminal acts of others

would cause harm is the crucial factor." Butler v. Acme Markets, Inc., 89 N.J. 270, 276 (1982). Also, when an employee causes such harm to an invitee on an employer's property, the analysis shifts to a negligent hiring, training, or supervising analysis. Pickett on behalf of Estate of Pickett v. Moore's Lounge, 464 N.J. Super. 549, 561 (2020). An employer cannot foresee an employee choosing to partake in actions that will immediately get them fired. Butler, 89 N.J. 276. Furthermore, plaintiff has failed to show negligent hiring, retention, or supervising; therefore, plaintiff's non-delegable duty claim also fails. Pickett, 464 N.J. Super. at 561.

### D.

Next, plaintiff argues that the court erred in granting Sterling's motion for directed verdict because he presented sufficient evidence to sustain a jury verdict without the need for an expert. He claims the testimony and video evidence presented at trial establishes that Sterling's guards witnessed the escalating threats leading to the assault and they failed to intervene and de-escalate despite having the opportunity to do so. Thus, he asserts the evidence was clear enough to not be so esoteric that jurors of ordinary experience could not evaluate it without an expert. We agree.

We review de novo a motion for a directed verdict by applying the same standard as the trial court. See Smith v. Millville Rescue Squad, 225 N.J. 373,

16

397 (2016).  "Although we defer to the trial court's feel for the evidence, we owe no special deference to the trial court's interpretation of the law."  Lechler v. 303 Sunset Ave. Condo. Ass'n, 452 N.J. Super. 574, 582 (App. Div. 2017) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Pursuant to Rule 4:37-2(b), the applicable standard for assessing a motion for a directed verdict "is whether the evidence, together with legitimate inferences that can be drawn from it, could sustain a judgment in favor of the party opposing the motion."  Furey v. Cnty. of Ocean, 273 N.J. Super. 300, 309 (App. Div. 1994); see also R. 4:37-2(b).  "This includes accepting as true all evidence supporting the party opposing the motion and according that party the benefit of all favorable inferences, and if reasonable minds could differ, the motion must be denied."  Ibid. (citing Dolson v. Anastasia, 55 N.J. 2, 5 (1969)).

If "no rational juror could conclude that the plaintiff marshaled sufficient evidence to satisfy each prima facie element of a cause of action," the trial court should grant defendant's motion.  Smith, 225 N.J. at 397 (quoting Godfrey v. Princeton Theological Seminary, 196 N.J. 178, 197 (2008)).  However, "a judge is not to consider 'the worth, nature or extent (beyond a scintilla) of the evidence,' but only review 'its existence, viewed most favorably to the party

opposing the motion.'" Lechler, 452 N.J. Super. at 582 (quoting Dolson, 55 N.J. at 5-6).

"In most negligence cases, the plaintiff is not required to establish the applicable standard of care." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014). In the majority of negligence cases, "[i]t is sufficient for [the] plaintiff to show what the defendant did and what the circumstances were. The applicable standard of conduct is then supplied by the jury[,] which is competent to determine what precautions a reasonably prudent man in the position of the defendant would have taken." Id. at 406-07 (alterations in original) (quoting Sanzari v. Rosenfeld, 34 N.J. 128, 134 (1961)). In cases that do not require expert testimony, the facts are such that "a layperson's common knowledge is sufficient to permit a jury to find that the duty of care has been breached without the aid of an expert's opinion." Id. at 407 (quoting Giantonnio v. Taccard, 291 N.J. Super. 31, 43 (App. Div. 1996)).

However, in some instances, "the 'jury is not competent to supply the standard by which to measure the defendant's conduct,' and the plaintiff must instead 'establish the requisite standard of care and [the defendant's] deviation from that standard' by 'present[ing] reliable expert testimony on the subject[.]" Ibid. (first and second alteration in original) (citations omitted). To determine whether expert testimony is required, a court should consider "whether the

matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the [defendant] was reasonable." Ibid. (alteration in original) (quoting Butler v. Acme Mkts, Inc., 89 N.J. 270, 283 (1982)).

The common knowledge doctrine applies in circumstances "where 'jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts.'" Hubbard v. Reed, 168 N.J. 387, 394 (2001) (quoting Estate of Chin v. Saint Barnabas Med. Ctr., 160 N.J. 454, 469 (1999)). "The most appropriate application of the common knowledge doctrine involves situations where the carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience." Rosenberg v. Cahill, 99 N.J. 318, 325 (1985).

Expert testimony is not required here, as jurors of average intelligence and experience do not need specialized or technical knowledge to determine whether the security guards were negligent in their speed in responding to the altercation. Lucia v. Monmouth Med. Ctr., 341 N.J. Super. 95, 103 (App. Div. 2001). The knowledge needed to make a decision on this is not "so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the [defendant] was reasonable." Davis, 219 N.J. at 407. Jurors

heard several witnesses to the altercation testify on how quickly Sterling guards came to assist and watched videos of the fight take place. The ability to understand if a security guard came to another's assistance fast enough in a moment of urgency should be considered so apparent that the person of "average intelligence and ordinary experience" should recognize negligence or the lack thereof without an expert. Rosenberg, 99 N.J. at 325. Thus, it was error to grant a directed verdict based on the lack of expert testimony.

E.

Because we find that no expert testimony was needed, we do not address plaintiff's contention that the law of the case required the trial court to follow the suppression court's ruling that no expert testimony was needed other than to say: "[A]n order denying summary judgment is not subject to the law of the case doctrine because it decides nothing and merely reserves issues for future disposition." Gonzalez v. Ideal Tile Importing Co., 371 N.J. Super. 349, 356 (App. Div. 2004), aff'd on other grounds, 184 N.J. 415 (2005).

To the extent we have not addressed any arguments raised by plaintiff, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part and vacated and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0835-24